## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**KEVIN A. TOLLIVER,**

        **Plaintiff,**

    **v.**

**OHIO DEPARTMENT OF REHABILITATION
AND CORRECTIONS,** *et al.,*

        **Defendants.**

**Civil Action 2:22-cv-4567
Judge Edmund A. Sargus, Jr.
Magistrate Judge Kimberly A. Jolson**

### REPORT AND RECOMMENDATIONS

Plaintiff, a state prisoner proceeding without the assistance of counsel, has filed a civil rights complaint with this Court. (Doc. 3). He seeks declaratory and injunctive relief under 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc-1 for alleged religious rights violations. (*Id.*). The case is currently before the Court for the initial screening of the Complaint as required by law. 28 U.S.C. § 1915(e)(2); 28 U.S.C. § 1915A(a). For the reasons that follow, the Undersigned **RECOMMENDS** that the Court **DISMISS:**

    a. all claims against the Ohio Department of Rehabilitation and Corrections raised under 42 U.S.C. § 1983;

    b. all claims raised on behalf of other Muslim inmates;

    c. all claims raised on behalf of groups of which Plaintiff is not a member;

    d. all claims under § 1983 based on alleged violations of ODRC policy; and

    e. the claim alleging a denial of Halal or Kosher meals.

The Court should **ALLOW** the remaining claims to **PROCEED** at this time, and the parties should be prepared to address the issues raised in Section III.F through III.H.

## I.    Initial Screening Standard

Because Plaintiff is a prisoner seeking "redress from a governmental entity or officer or employee of a governmental entity," and is proceeding *in forma pauperis* (*see* Doc. 2), the Court is required to conduct an initial screening of his Complaint.  28 U.S.C. § 1915A(a) and 28 U.S.C. § 1915(e)(2).  The Court must dismiss the Complaint, or any portion of it, that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. §§ 1915A(b) and 1915(e)(2).

A complaint may be dismissed as frivolous when the plaintiff cannot make any claim with a rational or arguable basis in fact or law.  *Neitzke v. Williams*, 490 U.S. 319, 328–29 (1989); *see also Lawler v. Marshall*, 898 F.2d 1196, 1198 (6th Cir. 1990).  An action has no arguable *legal* basis when the defendant is immune from suit or when plaintiff claims a violation of a legal interest which clearly does not exist.  *Neitzke*, 490 U.S. at 327.  An action has no arguable *factual* basis when the allegations are delusional or rise to the level of the irrational or "wholly incredible."  *Denton v. Hernandez*, 504 U.S. 25, 32 (1992); *Lawler*, 898 F.2d at 1199.  The Court need not accept as true factual allegations that are "fantastic or delusional" in reviewing a complaint for frivolousness.  *Hill v. Lappin*, 630 F.3d 468, 471 (6th Cir. 2010) (quoting *Neitzke*, 490 U.S. at 328).

Further, a complaint must also be dismissed if it fails to state a claim on which relief may be granted.  28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).  To state a claim for relief, a complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The Court must construe the complaint in plaintiff's favor, accept all well-pleaded factual allegations as true, and evaluate whether the complaint contains "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). However, a complaint that consists of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" is insufficient. *Id*. (quoting *Twombly*, 550 U.S. at 555).

In the interest of justice, this Court is also required to construe a pro se complaint liberally and to hold it "to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) and citing Fed. R. Civ. P. 8(f) [now (e)]). Even with such a liberal construction, a pro se complaint must still adhere to the "basic pleading essentials." *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989). Specifically, a pro se "complaint 'must contain either direct or inferential allegations respecting all the material elements' to recover under some viable legal theory." *Barhite v. Caruso*, 377 F. App'x 508, 510 (6th Cir. 2010) (quoting *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Iqbal*, 556 U.S. at 678.

## II.   Parties and Claims

Plaintiff Kevin A. Tolliver is currently incarcerated at Grafton Correctional Institution (GCI). (Complaint,[1] PageID 40). He sues the Ohio Department of Rehabilitation and Corrections (ODRC) and/or Annette Chambers-Smith, its Director. (*Id*.). This Report and Recommendation

---

[1] For better readability, the Undersigned will cite to Plaintiff's Complaint in this case, of record as Docket Entry 3, simply as the Complaint. The Complaint was initially submitted as an attachment to Plaintiff's Application to proceed *in forma pauperis* (*see* Doc. 1-1) but was filed separately on the docket when the Application was granted. (*See* Doc. 2, 3). All PageID references to the Complaint refer to Docket Entry 3. Where other documents are cited, document numbers (and case numbers, if applicable) are provided.

will assume without holding that Plaintiff has named both as Defendants.[2] The Director is sued in her official capacity only. (*Id.*).

Plaintiff initially submitted the Complaint (and related papers) in *Kevin Tolliver v. Warden Noble*, Case No. 2:16-cv-1020, a separate case pending before this Court. (*See* Doc. 208 therein). The Clerk of Court later opened this case, and docketed Plaintiff's submissions in it. The two cases are proceeding separately at this time. The earlier case will be referred to as the "2016 Case" in this Report and Recommendation.[3]

Plaintiff describes the Complaint in this action as "a direct challenge to practices and policies of the [ODRC]." (Complaint, PageID 40). As noted above, Plaintiff is proceeding under 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc-1. He alleges violations of his "First Amendment rights under the United States Constitution in regard to freedom of religion and violations of protections against establishment of religion." (Complaint, PageID 39). More specifically, he asserts that the ODRC policies and practices are ineffective and insufficient to lead to the hiring of qualified contractors/service providers to serve the Islamic community within Ohio's prisons. (*See* Complaint, PageID 41–42). This leads, says Plaintiff, to the denial of certain religious services, and "constitute[s] religious persecution, denial or infringement of religious rights, and an establishment of religion in favor of

---

[2] Plaintiff describes the named Defendants as follows:

> 5. Defendants: The Ohio Department of Rehabilitation and Corrections (ODRC), Annette Chambers-Smith (Director), 4545 Fisher Road, Columbus, Suite D, Ohio 43228. Standing in her official capacities for the fiction ODRC as signatory and/or administrators over the ODRC Policies for the purposes of Declaratory Judgments and injunctive Relief.

> 6. Sued in their: official capacities for declaratory judgments, injunctive relief, and "appropriate relief" for the constitutional violations and RLUIPA claims.

(Complaint, PageID 40).

[3] A third case concerning parole proceedings has been docketed as *Kevin A. Tolliver v. Ohio Parole Board*, Case No. 2:22-cv-4566, and is also proceeding separately.

both Christianity and the [WD Muhammad] style of practice, which is an ongoing harm to Plaintiff and all similarly situated mainstream adherents to the Islamic faith in Ohio prisons." (Complaint, PageID 42, ¶ 19).

Plaintiff appears to base this conclusion, at least in part, on the fact that there are "no Muslim employees anywhere in the Religious Services Departments of ODRC, qualified by advanced education in Islamic studies (M.A. or Ph.D.) or similar religious accreditations (A'lim, Mufti, or Shaykh), [and that] there is no one on staff to properly oversee hiring of contractors and/or to administer and supervise policy issues on behalf of one of ODRC's principal faith group." (Complaint, PageID 42, ¶ 18). Plaintiff has had conflicts with the contractors providing such religious services, as discussed at length in the 2016 Case. *See, e.g.*, *Tolliver v. Noble*, No. 2:16-cv-1020, 2022 WL 843573, at *1 (S.D. Ohio Mar. 22, 2022), *appeal dismissed sub nom. Tolliver v. Foley*, No. 22-3382, 2022 WL 2919958 (6th Cir. May 18, 2022) ("Mr. Tolliver had conflicts with Imams Abdul Rahman Shahid and Sunni Ali Islam, independent contractors providing religious services to Muslim inmates for the [ODRC]. Plaintiff adheres to a different sect of Islam than the contractors and disagreed with how the Imams provided services and interacted with Muslim inmates who disagreed with their religious views and practices.").

In fact, nearly all of the allegations in the Complaint here repeat or echo Plaintiff's prior allegations. (*See, e.g.*, Amended Complaint, Doc. 30, PageID 200–09, 225; Motion for Preliminary Injunction, Doc. 34, PageID 259–60; Reply in Support of Motion for Preliminary Injunction, Doc. 58, PageID 418–19; Response to Motion for Judgment on the Pleadings, Doc. 84, PageID 558, 563; Motion for Leave to File Second Amended Complaint, Doc. 100 and 100-1, PageID 661–72, 685–88, 691); Motion for Declaratory Judgment, Doc. 110, PageID 737–42; Judicial Notice of Denial of Religious Services, Doc. 130, PageID 899–901; Memorandum in

Opposition to Summary Judgment, Doc. 161, PageID 1152–53, 1158–59, 1162–63, 1166–67; Motion for Leave to File Second Amended Complaint, Doc. 165 and 165-1, PageID 1240–42, 1245–46, 1248–49, 1258–62; Motion for Declaratory Judgment, Doc. 167, PageID 1268–72, 1275–76; Memorandum in Opposition to Summary Judgment, Doc. 204, PageID 1471–73, all in Case No. 2:16-cv-1020).  Plaintiff has described these policy issues as "inextricably linked" to the retaliation issues raised in 2016 Case.  (*See, e.g.*, Doc. 161, PageID 1152–53 in Case No. 2:16-cv-1020).[4]

---

[4] For example, Plaintiff argued, in a 2021 Memorandum filed in the 2016 Case:

> For decades the ODRC has been involved in a Denial of Religious Rights, Establishment of Religion, Religious Persecution, and is violating the Religious Land Use Institutionalized Persons Act (RLUIPA). These Constitutional issues are maintained in Sections B and C of his complaint (doc. 30) where he requested relief in ¶ 140, ¶ 142 and ¶ 143.

> Therein it is argued Plaintiff was forced to address these ongoing issues in grievances starting in 2012. From long before that time until present, ODRC has knowingly allowed, encouraged, and facilitated individual Contractors for Islamic services in failing to providing services for which they are contracted. This is a statewide systematic denial of services and programming to Muslim inmates. The purpose being to keep official numbers of Muslims participating in authorized religious activities down and thereby conserve resources for use on Christian inmates and for Christian faith based programming.

> The ODRC's contracting practices and policies for Islamic Service, management of these contracts and Contractors, are meant to establish and maintain a system of underqualified candidates who cannot, or will not, perform on contracts. Contractors who will not work toward providing conventional services, proportionally, nor on par with those offered to Christian inmates. This is clearly a denial of services, establishment of religion, and a RLUIPA case.

> In the [Amended] Complaint (doc 30) it is argued that ODRC has deliberately established a group of Contractors from a minority sect, with ties to the black nationalist group Nation of Islam (NOI), as the preferred Contractors in a majority of Ohio's prisons. That these Contractors regularly conduct themselves in a manner offensive to mainstream practitioners by not performing mandatory religious rites and rituals. Contractors who are often openly hostile to non-blacks, or those from mainstream Islamic communities (e. g. : Arabs, Indo-Pakistanis, Turks, etc. ). Their enmity extends to African American Muslims from non-NOI derived communities who reject the teachings of Black-Nationalism as Anti-Islamic[.]
> . . .
> That said, his lawsuit is foremost about those issues of Sections B and C (stated above) inextricably linked to the Retaliation of Section D.

(Doc. 161, PageID 1152–53 in Case No. 2:16-cv-1020).  This Court may take judicial notice of court records that are available online to members of the public.  *See Lynch v. Leis*, 382 F.3d 642, 648 n.5 (6th Cir. 2004) (*citing Lyons v. Stovall*, 188 F.3d 327, 332 n.3 (6th Cir. 1999)).

In his new case, Plaintiff appears to seek declaratory and injunctive relief only. (Complaint, PageID 43, 51–52).  He requests declaratory judgment with respect to fourteen "Counts" or statements, as articulated in the right column and renumbered by the Court in the left column, below:

| Count No. | |
|---|---|
| 1 | 1.)  Classification of all denominations (groups or sects) of the Islamic faith under one policy without recognition of major differences in the rites and rituals thereof results in an ineffective policy that denies religious services to Muslim Inmates. |
| 2 | a.  The terms "largest religious catchment" and "broadest range of adherents"  in 72-REG-12[5] must mean mainstream Sunni practice or is too vague to accommodate normative Sunni Muslims. Because Sunni orthodoxy alone serves all major Islamic communities. |
| 3 | b.  Shia Muslims have significant religious differences to Sunni Muslims and thus deserve their own policy or subsection. |
| 4 | c.  The nation of Islam (NOI) is a group with little in common with mainstream Sunni Muslims and thus deserve their own policy or subsection. |
| 5 | d.  The Moorish Science Temple of America (MST) is a group with little in common with mainstream Sunni Muslims and thus deserve their own policy or subsection. |

---

[5] The quoted terms do not appear in ODRC Policy No. 72-REG-12, entitled "Muslim Religious Practices."  *See* https://drc.ohio.gov/about/resource/policies-and-procedures/religious-services-programming/muslim-religious-practices (accessed April 4, 2023).  The terms do appear in the more general ODRC Policy No. 72-REG-01, entitled "Institutional Religious Services."  *See* https://drc.ohio.gov/about/resource/policies-and-procedures/religious-services-programming/institutional-religious-services (accessed April 4, 2023).  This Policy says, among other things:

> Selection of a contract religious provider shall ensure coverage for the largest religious catchments in the facility.
> …
> All contract religious providers shall be advised that they should appeal to the broadest range of adherents in the faith group. They should emphasize the common, fundamental teachings of the faith.
> . . .
> Volunteers shall be informed that in all of their teaching they are to appeal to the broadest possible range of persons in the faith group. Sectarian distinctions are to be avoided by appealing instead to the common, fundamental teachings of the faith.

ODRC Policy 72-REG-01, Sections VI.C.1, VI.C.3, and VI.E.4.

| 6 | e. The Nation of Gods and Earths (5%'s) are not a religion recognized by ODRC and should not be considered under the policy for Islam. |
|---|---|
| 7 | 2.) As its written 72-REG-01, 02 and 12 lack sufficient detail for establishment of what "Jummuah Services" are and what rites and rituals must be observed to make it valid for mainstream Muslims. |
| 8 | 3.) Failure to contract Islamic Services Providers from mainstream communities, and/or to have criteria in place to ensure contractors are able, willing, and qualified to perform rites and rituals necessary to perform their duties results in a denial of services to Muslim Inmates from conventional communities. |
| 9 | 4.) Issuing multiple contracts to one Islamic Services Provider at several different ODRC facilities denies services to Muslim Inmates around Ohio. |
| 10 | 5.) Failure to employ any properly educated/credentialed Imams as staff members anywhere within the Religious Services Department of ODRC (i.e.: Central Office, Regional Catchment Areas, nor any of the 36 Ohio prisons): |
| 11 | a. Prevents contracting quality Islamic Services Providers from mainstream communities at the individual prisons; |
| 12 | b. Precludes a criteria ensuring services contracted for conform to rites and rituals of normative practice throughout the State; and, |
| 13 | c. Results in a denial of services to Muslim Inmates from conventional communities. |
| 14 | 6.) Plaintiff Tolliver's life-long adherence to the Shafi'i school of Islamic Jurisprudence and Naqshbandi Sufism places him in a higher category of dietary requirements than the general Muslim population covered under 72-REG-01 through 12. His Halal (or Kosher) diet must be re-established and maintained. |

(Complaint, PageID 51–52). Plaintiff sought the same or similar relief in the 2016 Case. (*See, e.g.*, Motion for Declaratory Judgment, Doc. 110 in Case No. 2:16-cv-1020, PageID 737–42; *see also* Doc. 117 (denying the Motion)).

Here, in addition to these declarations, Plaintiff also seeks a permanent injunction "requiring Defendants to cease implementation of their errant policy and make appropriate corrections under the supervision of this Court." (Complaint, PageID 52, ¶ 57).

III.   **Discussion**

The Undersigned reads Plaintiff's Complaint as raising claims under 42 U.S.C. § 1983 for violations of the Free Exercise and Establishment Clauses of the First Amendment and the Equal Protection Clause of the Fourteenth Amendment, as well as a claim under RLUIPA.  Plaintiff appears to raise these claims against both the ODRC and its Director.  Some of the claims should not proceed, for the reasons discussed in the following sections.  Others should proceed at this time, subject to the concerns outlined in the final sections.

The Undersigned begins the discussion with the parties who are sued, and the persons on whose behalf they are sued.

A.   **Section 1983 Claims Cannot Be Raised Against the ODRC**

To state a cause of action under § 1983, a plaintiff must allege:  "(1) a deprivation of a right secured by the Constitution or laws of the United States (2) caused by *a person* acting under color of state law."  *Hunt v. Sycamore Cmty. Sch. Dist. Bd. of Educ.*, 542 F.3d 529, 534 (6th Cir. 2008) (emphasis added).  The ODRC is not a "person" for purposes of this statute.  *See Vizcarrondo v. Ohio Dep't of Rehab. & Corr.*, No. 1:18-cv-1255, 2019 WL 6251775, at *5 (N.D. Ohio Nov. 22, 2019) (noting "multiple courts have found that ODRC is not a 'person' subject to suit under 42 U.S.C. § 1983.");  *Peeples v. Ohio Dep't of Rehab. & Corr.*, 64 F.3d 663 (6th Cir. 1995) (affirming the district court's dismissal of suit against the ODRC that held that "the ODRC is not a 'person'") (unreported table case).  Plaintiff therefore fails to state a § 1983 claim against the ODRC upon which relief may be granted.  **His claims under the First Amendment or any other constitutional provision, which are raised against the ODRC under § 1983 should be dismissed**.

### B.    Plaintiff Cannot Raise Claims on Behalf of Other Inmates

Throughout his Complaint, Plaintiff alleges that ODRC policies harm "Muslim Inmates" in addition to, or along with, himself.  (*See, e.g.*, Complaint, PageID 41 (asserting that ODRC practices have "harmed Muslim Inmate recipients" and referring to the "denial of the Muslim Inmate' basic religious rights statewide"); PageID 42 (alleging that "many prisons only get Jummuah once a month" and that policies present "an ongoing harm to Plaintiff and all similarly situated mainstream adherents to the Islamic faith in Ohio prisons.")).

While a non-attorney plaintiff may raise claims on his own behalf, he cannot bring claims in federal court on behalf of others.  Specifically, "[a] prisoner cannot bring claims on behalf of other prisoners.  A prisoner must allege a personal loss and seek to vindicate a deprivation of his own constitutional rights." *Corn v. Sparkman,* 82 F.3d 417, 1996 WL 185753, at *1 (6th Cir. Apr. 17, 1996) (citation omitted) (unpublished table case).

This is a question of standing.  *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 126 (2014) (standing encompasses, among other things, "the general prohibition on a litigant's raising another person's legal rights") (citations omitted).  This is so because a prisoner does not have standing to bring a § 1983 claim on behalf of other prisoners.  *See Barnett v. Luttrell*, 414 F. App'x 784, 787 (6th Cir. 2011) (citing *Jones v. Caruso,* 569 F.3d 258, 276-77 (6th Cir. 2009) (also noting that "it is well-settled that a party whose conduct is legitimately regulated by a statute or regulation lacks standing to challenge it on the basis that it is unconstitutional as applied to others.")).  And, a claim under RLUIPA is subject to the general rules of standing under Article III of the United States Constitution.  *See* 42 U.S.C. § 2000cc-2(a) ("Standing to assert a claim or defense under this section shall be governed by the general rules of standing under article III of the Constitution.").  This means that a prisoner who is Muslim lacks standing to make "general assertions on behalf of the entire Muslim inmate community at [a prison]." *Pleasant-Bey v. Shelby*

10

*Cnty. Gov't*, No. 2:17-cv-2502, 2019 WL 1601495, at *5 (W.D. Tenn. Apr. 15, 2019) (quoting *Jacobs v. Strickland*, No. 2:08-cv-680, 2009 WL 2476896, at *3 (S.D. Ohio Aug. 11, 2009) ("The Magistrate Judge…correctly concluded that [plaintiff] could not assert the claims of other Sunni Muslims who were allegedly deprived of their rights under RLUIPA and the United States Constitution.")).

Thus, **to the extent that Plaintiff attempts to raise claims on behalf of other Muslim inmates, those claims and requests for relief should be dismissed**. *Id.*, *see also Williams-Bey v. Smith*, No. 1:20-cv-828, 2020 WL 1954140, at *1 (N.D. Ohio Apr. 23, 2020) ("[T]o the extent the Plaintiff purports to represent a class or anyone other than himself, his Complaint must be dismissed."); *Marcum v. Jones*, No. 1:06-cv-108, 2006 WL 543714, at *1 (S.D. Ohio Mar. 3, 2006) (and cases cited therein) (holding that a pro se inmate "may bring his own claims to federal court without counsel, but not the claims of others"); *Garrison v. Michigan Dep't of Corr.*, 333 F. App'x 914, 919 (6th Cir. 2009) ("[A] pro se litigant may represent himself on his own claims, but [he] may not act in a representative capacity," or represent a class of inmates in class action litigation). Plaintiff's claims and arguments in this case should therefore be "limited to alleged violations of his own constitutional rights." *Dodson v. Wilkinson*, 304 F. App'x 434, 438 (6th Cir. 2008); *see also Lowe v. Oppy*, No. 2:14-cv-535, 2015 WL 1439345, at *2 (S.D. Ohio Feb. 10, 2015), *report and recommendation adopted*, 2015 WL 1439325 (S.D. Ohio Mar. 27, 2015) ("to the extent that Plaintiff intends to assert claims on behalf of other inmates of the Rastafarian religion, his claims must fail.").

The Undersigned next considers whether Plaintiff's claims and arguments in this case allege a "concrete and particularized" injury to Plaintiff specifically, sufficient to give him standing to sue. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

### C.    The Court Can Construe the Allegations About Injuries to Plaintiff

"To have standing, a plaintiff must allege (1) an injury in fact (2) that's traceable to the defendant's conduct and (3) that the courts can redress." *Gerber v. Herskovitz*, 14 F.4th 500, 505 (6th Cir. 2021) (citing *Lujan,* 504 U.S. at 559-61). To establish a cognizable injury in fact:

> the claimant must establish the " 'invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.' " *Spokeo, Inc. v. Robins*, 578 U.S. 330, 136 S. Ct. 1540, 1548, 194 L.Ed.2d 635 (2016) (quoting *Lujan*, 504 U.S. at 560, 112 S.Ct. 2130). To qualify as particularized, an injury "must affect the plaintiff in a personal and individual way," *Lujan*, 504 U.S. at 560 n.1, 112 S.Ct. 2130, not in a general manner that affects the entire citizenry, *Lance v. Coffman*, 549 U.S. 437, 439, 127 S.Ct. 1194, 167 L.Ed.2d 29 (2007). . . .
>
> A "concrete" injury is one that "actually exist[s]." *Spokeo*, 136 S. Ct. at 1548. In the case of an intangible injury like this one, the claimant must establish "a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Id*. at 1549; *see TransUnion LLC v. Ramirez*, ⸺ U.S. ⸺, 141 S. Ct. 2190, 2204, 210 L.Ed.2d 568 (2021).

*Gerber*, 14 F.4th at 505-506.

Plaintiff's Complaint in this case appears to be drafted primarily as a critique of ODRC policies, deeming them "ineffective" and concluding that they are unconstitutional. (*See, e.g.*, Complaint, PageID 41–42). After describing the ODRC's "system of contracting independent Islamic Services Providers as institutional Imams at all Ohio prisons" as "unserviceable" and "constitutionally unfair" (*id*., PageID 41), he asserts that "[t]he Policies, Contracts, Contractors, as well as the screening for qualifications, ability & fitness are inadequate in Ohio prison's and therefore causing on going harm to Plaintiff and all similarly situated mainstream normative adherents to the Islamic faith[.]" (Complaint, PageID 42, ¶ 20). He gives some examples of problems that have allegedly arisen that have denied "the Muslim Inmates' basic religious rights statewide":

> Examples of this are: **[1]** the Tradition of Lamb Meat on the Eid al-Adha, which used to be budgeted for, but not ordered nor served at WDM contractor facilities.;

> **[2]** Coordination of Islamic prayer during Ramadan, which has been denied (delayed past its required time) upon opinions given by WDM Contractors (i.e.: inmates were forced to choose between eating the "Iftar" evening meal or praying "Magrib" evening prayer).; **[3]** The requirements of recitation of the "Kutba al-Hijr" in Arbic at the beginning of every Jummuah.; **[4]** The failure to order, or even accept donations of books, to support the proper education and spiritual development when those books do not support a Contractor's minority views.; Among many other issues.

(Complaint, PageID 41, ¶ 14 (numbers inserted)). Reading the Complaint liberally, the Undersigned can infer that Plaintiff is alleging that *he* has faced these four issues. So construed, Plaintiff identifies harm to himself sufficient to survive a preliminary standing inquiry for purposes of this initial screening. He cannot, however, raise these issues on behalf of other inmates.

Plaintiff's fourteen requested declarations seek to address problems he sees with the ODRC's policies and the contractors operating under the policies. One Count clearly identifies a harm to Plaintiff—Count 14, which says:

> Plaintiff Tolliver's life-long adherence to the Shafi'i school of Islamic Jurisprudence and Naqshbandi Sufism places him in a higher category of dietary requirements than the general Muslim population covered under 72-REG-01 through 12. His Halal (or Kosher) diet must be re-established and maintained.

(Complaint, PageID 49–50, 52).[6] But not all Counts do.

Plaintiff seeks declarations that the ODRC's policies should be interpreted in specific ways consistent with Plaintiff's views of his and others' religions. (*See, e.g.*, Complaint, PageID 43, 45 (asking this Court to declare that "Sunni orthodoxy alone serves all major Islamic communities" and "The Moorish Science Temple of America (MST) is a group with little in common with mainstream Sunni Muslims…" and "The Nation of Gods and Earths (5%'s) are not a religion recognized by ODRC and should not be considered under the policy for Islam.")). Some of these assertions concern groups from which Plaintiff takes pains to separate himself. He describes

---

[6] Although it appears Plaintiff has standing to bring Count 14, the adequacy of this claim is addressed below in Section III.E.

himself instead as a life-long adherent "to the Shafi'i school of Islamic Jurisprudence and Naqshbandi Sufism." (Complaint, PageID 49, 52). The Complaint appears to indicate that Plaintiff identifies as part of the Sunni Muslim tradition. (Complaint, ¶¶ 26, 51).

Several Counts of the Complaint describe Plaintiff's views on which groups are, and are not, part of the "mainstream" or "normative" Muslim religion. (Complaint, PageID 43–45, 51). He posits that ODRC Policy 72-REG-12 (concerning "Muslim Religious Practice") must be interpreted in accordance with these views, apparently to serve only "mainstream Sunni practice." (Complaint, PageID 43). He says that certain Muslim groups should have their own separate policies (Shia Muslims, Nation of Islam, Moorish Science Temple, but not the Nation of Gods and Earths (5%'s)) and further suggests that these groups should be *excluded* from participation in the mainstream Sunni practice provided for (in his view) in ODRC Policy 72-REG-12. (*See, e.g.*, Complaint, PageID 45 ("Sunni's do not consider NOI variant beliefs or services valid. Sunni Muslims, when aware of the NOI's divergent beliefs, find their participation in Jummuah (Friday Prayer) disrespectful and consider it a 'braking of the ranks' (i.e.: A gap in prayer line which needs to be closed).")).

To the extent that Plaintiff asks this Court to declare that groups in which he is not a member "deserve" to have the ODRC write them their own policies, he lacks standing to raise these claims. **Counts 3, 4, 5, 6 should be dismissed on this basis**. (Complaint, PageID 44–45, 51).

The remaining Counts for declaratory judgment can conceptually be divided into two groups: those alleging that the Policies are, as written, unconstitutional; and those alleging or suggesting that the Policies have been violated. As discussed next, the former group conceivably could state a claim to be pursued here under § 1983, while the latter group does not.

14

### D.     Alleged Violations of ODRC Policy are not Actionable under § 1983

To the extent that Plaintiff alleges that the contractors providing services to him as a Muslim inmate have violated ODRC Policies, such claims under § 1983 must be dismissed, for (at least) two reasons. First, no contractors are named as defendants in this case. (Complaint, PageID 39). Plaintiff did sue two contractors in the 2016 Case; the claims against one were dismissed while a retaliation claim remains pending as to the other. (*See* Doc. 183 in Case No. 2:16-cv-1020). Whether Plaintiff gets another chance to make these claims—against anyone—is discussed in the later section about res judicata.

Second, alleged violations of ODRC policy do not state a claim under § 1983. That is, Section 1983 does not provide a remedy for violations of state laws or regulations. *See Williams v. Burgess*, No. 5:21-cv-99, 2021 WL 5816830, at *4 (W.D. Ky. Dec. 7, 2021) (citing *Laney v. Farley*, 501 F.3d 577, 580 n.2 (6th Cir. 2007)) ("The purpose of § 1983 is to remedy violations of federal law, not state law."); *Lewellen v. Metro. Gov't of Nashville*, 34 F.3d 345, 347 (6th Cir. 1994) ("Unless a deprivation of some federal constitutional or statutory right has occurred, § 1983 provides no redress even if the plaintiff's common law rights have been violated and even if the remedies available under state law are inadequate").

Moreover, "[c]ourts routinely have recognized that a prisoner does not enjoy any federally protected liberty or property interest in state procedure." *White v. Perron*, No. 2:20-cv-247, 2021 WL 3855589, at *9 (W.D. Mich. Aug. 30, 2021) (citing *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983) and other cases). Thus, "Defendants' alleged failure to comply with [a state] administrative rule or policy does not itself rise to the level of a constitutional violation." *Williams v. Burke*, No. 2:08-cv-123, 2009 WL 1788374, at *1 (W.D. Mich. June 18, 2009) (collecting cases); *Burgess*, 2021 WL 5816830, at *4 ("to the extent that Williams identifies state policies as conferring a right for a § 1983 claim, the Court dismisses that claim").

15

Plaintiff's suggestion that Defendants or others violated ODRC policy should therefore be dismissed for failure to state a claim on which relief may be granted under § 1983. *See Brown v. Mahlman*, No. 1:22-cv-239, 2022 WL 17817615, at *3 (S.D. Ohio Dec. 19, 2022) (dismissing alleged violations of ODRC policy because they "fall outside the scope of § 1983"). This includes arguments that the ODRC failed to hire contractors who represent the "largest religious catchment" and "broadest range of adherents" and thus violated ODRC Policy No. 72-REG-01, or any claims that the contractors failed to comply with that policy or other policies. These arguments, which may be part of Counts 2 and 8, fail to state a claim under § 1983.

### E. Plaintiff's Allegation That He Was Denied Halal Meals Does Not State a Claim for a Violation of RLUIPA, the First Amendment, or the Equal Protection Clause

Plaintiff alleges in his Complaint that:

[his] life-long adherence to the Shafi'i school of Islamic Jurisprudence and Naqshbandi Sufism places him in a higher category of dietary requirements than the general Muslim population covered under 72-REG-01 through 12. His Halal (or Kosher) diet must be re-established and maintained.

51. Plaintiff is a second generation Muslim American, raised by his mother in the Shafi'i school of jurisprudence (madhab) and Naqshbandi school of spiritual purification (tasawwuf). His father, a retired Imam (Islamic priest), ensured Plaintiff received a formal education in religion as a child and all of Mr. Tolliver's life he has endeavored to live in accordance with his strongly held beliefs. As it relates to this declaratory judgment action he has maintained a halal diet his entire life. He applied for and received a Kosher accommodation that were periodically challenged but never interrupted until it was taken at Belmont Correctional Institute (BeCI) in 2011.

52. Mr. Tolliver has been without his religiously necessary diet all this time due to an unjust policy that does not recognize Muslims are not one homogeneous group. A policy that is further unfair because it allows for some similarly situated Christians to receive a Kosher diet (e. g.: Sabatarians, House of Yahway, Messianic, etc. . The members of these small Christian subsets are able to receive Kosher meals even though the main body of Christians cannot. (See: Exhibit-3)

53. This disparate treatment cannot stand under the First Amendment and RLUIPA between three Abrahamic religions. Jews, Christians, and Muslims are all following

Moses to varying extents and it would stand to reason that some of the adherents in each group require stricter standards than others.

54. It is ODRC's position that cost is the main factor in denying Muslims the dietary respect given other groups. That position should be ineffective. Tolliver is one of only eight (8) Muslims incarcerated in Ohio adhering to the Shafi'i madhab and the only follower of Naqshbandi tasawwuf. Hence, his dietary standard exceeds even that of other Sunni's within his Shafi'i judicial methodology due to his Naqshbandi spiritual requirements.

[Note; Evidence taken from Plaintiff by Defendants as documented in *Tolliver v. Noble* (Case No. 2:16-cv-1020) included ODRC and AIRMARK's statistical information showing that of all the Jews incarcerated by ODRC very few choose the Kosher diet. Hence, there is no reason to assume that there would be a run on the far inferior frozen MRE's of the ODRC's Kosher meal plan offered by AIRMARK if an appropriate policy correction does occur. Other evidence indicated that the cost differential between Kosher diet and regular meal is actually less than 30 cents per tray and as low as 17 cents on some meals.]

(Complaint, PageID 49–50).

As his new Complaint suggests, Plaintiff raised this issue in the 2016 Case, in the context of a Motion for Preliminary Injunction. (*See, e.g.*, Motion, Doc. 34, PageID 259–60; Reply in Support of Motion, Doc. 58, PageID 418–19; Judicial Notice: Evidentiary Exhibit in Support of Pleadings for Restoration of Halal/Kosher Diet, Doc. 60, all in Case No. 2:16-cv-1020). This Court rejected his request. (*See* Report and Recommendation, Doc. 61, PageID 466–70; Order Adopting Report and Recommendation, Doc. 67 in Case No. 2:16-cv-1020). Plaintiff appealed (Doc. 70), and the United States Court of Appeals for the Sixth Circuit concluded that this issue on appeal was frivolous and not deserving of further argument or consideration. *See Tolliver v. Collins*, No. 19-3761 (6th Cir. Jan. 29, 2020) (Order, p.4). The appeal was ultimately dismissed on Plaintiff's motion after the Sixth Circuit denied his request to proceed on appeal *in forma pauperis. See Tolliver v. Collins*, No. 19-3761, 2020 WL 4590269, at *1 (6th Cir. Mar. 17, 2020).

The Sixth Circuit so concluded in light of its previous decision in *Robinson v. Jackson*, 615 F. App'x 310 (6th Cir. 2015), noting that "Ohio prisons offer vegetarian meals, which this court

17

has held to be [H]alal and not substantially burden a Muslim's free exercise of religion." *Tolliver v. Collins*, No. 19-3761 (6th Cir. Jan. 29, 2020) (Order, p.4).  In *Robinson*, the Sixth Circuit rejected claims under RLUIPA, the First Amendment, and the Equal Protection Clause made by a "devout Muslim who sincerely adheres to the Islamic faith." *Id.* at 311.  The Sixth Circuit said:

> Robinson's first claim is that Jackson violated his rights under the RLUIPA when she denied him Halal meals. Under the RLUIPA,
>
> > No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution ... even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.
>
> 42 U.S.C. § 2000cc–1(a); *see also Holt v. Hobbs,* ⸺ U.S. ⸺, 135 S.Ct. 853, 860, 190 L.Ed.2d 747 (2015). Accordingly, "[i]f a plaintiff produces *prima facie* evidence to support a claim alleging a violation of [the RLUIPA], the government shall bear the burden of persuasion[.]" 42 U.S.C. § 2000cc–2(b).
>
> Robinson notes that the legislative history accompanying the RLUIPA suggests a concern to protect a prisoner who is denied Halal meals during his incarceration. *See Cutter v. Wilkinson,* 544 U.S. 709, 716 n. 5, 125 S.Ct. 2113, 161 L.Ed.2d 1020 (2005). However, by Robinson's own definition, a meal containing no meat or alcohol qualifies as Halal. According to the defendants, the vegetarian meals provided to him by the prison meet this definition. Robinson has not alleged otherwise.
>
> <u>We have explicitly held that vegetarian meals are, in fact, Halal</u>. *Abdullah v. Fard,* 173 F.3d 854, at *1 (6th Cir.1999). In *Abdullah,* a Muslim man incarcerated in Ohio sued prison officials, alleging that they would not provide him Halal meat and that their failure to do so violated his right to equal protection. *Id.* The district court granted summary judgment to the defendants. On appeal, we first considered Abdullah's claim that the prison was serving him non-Halal meals, and rejected this argument:
>
> > Abdullah averred that a prohibition against non-*Halal* meat was fundamental to his religion. However, he can comply with this prohibition by eating vegetarian meals. Thus, Abdullah's First Amendment claim fails because the disputed policy did not force him to violate his religion.
>
> *Id.* citing *Abdur-Rahman v. Mich. Dep't Corrs.,* 65 F.3d 489, 491 (6th Cir.1995). Other district courts in this Circuit have since applied the logic of *Abdullah* in the context of RLUIPA claims. *See, e.g., Hudson v. Caruso,* 748 F.Supp.2d 721, 729–

30 (W.D.Mich.2010) (holding that providing a Muslim inmate vegetarian entrees without providing Halal meat entrees did not substantially burden free exercise); *Cloyd v. Dulin,* No. 3:12-CV-1088, 2012 WL 5995234, at \*4 (M.D.Tenn. Nov. 30, 2012) (citing *Abdullah,* 173 F.3d at \*1) ("Muslim prisoners do not have a right under the First Amendment or the RLUIPA to be provided [H]alal meat entrees; rather, a correctional facility need only provide Muslim prisoners with food that is not 'haram' (impermissible)."). Thus, as the district court found, <u>Robinson is not being denied Halal meals; he therefore fails to state a claim as a matter of law under the RLUIPA</u>.

<u>Robinson's First Amendment claim suffers a similar fate for similar reasons</u>. Under the First Amendment, inmates have the right to the free exercise of their religion. *Cruz v. Beto,* 405 U.S. 319, 322, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972). However, like Abdullah, Robinson is receiving meals that do not violate his religion. And while he may prefer to be served "[H]alal meat entrees rather than vegetarian entrees and non-meat substitutes, his food preferences, as a prisoner, are limited." *Cloyd,* 2012 WL 5995234, at \*4; *see also Rhodes v. Chapman,* 452 U.S. 337, 349, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981) ("The Constitution does not mandate comfortable prisons."). Prisoners have a constitutional right to meals that meet their nutritional needs; indeed, they have a constitutional right to be served meals that do not violate their sincerely-held religious beliefs. *Colvin v. Caruso,* 605 F.3d 282, 290 (6th Cir.2010). But there is no constitutional right for each prisoner to be served the specific foods he desires—such as Halal meat—in prison. *See Spies v. Voiovich,* 173 F.3d 398, 406-07 (6th Cir.1999) (holding that providing a Buddhist prisoner with a vegetarian diet but not a vegan diet was constitutionally permissible, and "the fact that Plaintiffs dislike the alternate diet available does not render it unreasonable or legally deficient.").

We therefore agree with the district court that Robinson has not presented "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" for the simple reason he alleges no specific misconduct. *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937. Without a plausible allegation that Jackson has violated Robinson's free exercise of religion, Robinson fails to state a First Amendment claim as a matter of law.

<u>Robinson's equal protection claim also fails on these grounds</u>. Robinson argues that, because the ODRC provides Kosher meals to Jewish inmates but does not provide Halal meals to Muslim inmates, the department is discriminating against him and those of his faith in violation of the Fourteenth Amendment. The Equal Protection Clause provides that "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV § 1. It is in essence "a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). Thus, to prevail on an equal protection claim, Robinson must demonstrate that the ODRC's provision of Kosher, but not Halal, meals constitutes disparate treatment of similarly-situated individuals. *See Abdullah,* 173 F.3d at \*2.

19

He must further prove that the disparate treatment in question is the result of intentional and purposeful discrimination. *Id.*

Again, the rationale of *Abdullah* is on point. In addition to making a First Amendment claim, Abdullah also alleged that the prison's provision of Kosher meals to Jewish inmates violated the Equal Protection Clause. In light of the fact that the prison's policy was "rationally related to legitimate penological interests[,]" we found that "Abdullah's equal protection claim lack[ed] merit, as he did not show that the policy was motivated by discriminatory intent." *Id.* at *2 (citing *Thompson v. Kentucky,* 712 F.2d 1078, 1081-82 (6th Cir.1983)). The same is true in the case at bar. As discussed *supra,* Robinson's complaint fails to allege that he was, in fact, denied a diet consistent with Halal requirements. Assuming he had done so, we must also find that Jewish and Muslim inmates are similarly-situated in context—an assertion he does not develop other than to plainly state that "Jewish inmates in ODRC custody receive Kosher meals." Even assuming both of those elements are met, Robinson fails to allege that the ODRC is not providing Halal meals pursuant to intentional or purposeful discrimination. *See Abdullah,* 173 F.3d at *2; *see also Patel v. U.S. Bureau of Prisons,* 515 F.3d 807, 815-16 (8th Cir.2008) (rejecting a Muslim prisoner's equal protection claim on summary judgment because he had not presented evidence that prison officials had refused to provide Halal meals based on discriminatory intent). Therefore, Robinson fails to state a valid equal protection claim as a matter of law. The district court's decision to grant judgment on the pleadings to Jackson was therefore not improper.

*Robinson*, 615 F. App'x at 313-15 (emphasis added and footnotes omitted).

A few months after his appeal was dismissed, Plaintiff raised the issue again in the 2016 Case, in a Motion for Declaratory Judgment. (*See, e.g.*, Doc. 110 in Case No. 2:16-cv-1020, PageID 741–42). Plaintiff's requests were nearly verbatim to those raised in this new Complaint (*Id*.). This Court rejected his claim in this context, too. (*See, e.g.*, Report and Recommendation, Doc. 112, PageID 804; Order Adopting Report and Recommendation, Doc. 117, PageID 832, all in Case No. 2:16-cv-1020). Plaintiff appealed again. (Doc. 120 in Case No. 2:16-cv-1020). The Sixth Circuit dismissed the appeal for a lack of jurisdiction. *Tolliver v. Foley*, No. 21-3250, 2021 WL 4205036, at *1 (6th Cir. Apr. 22, 2021).

In his Complaint here, Plaintiff again alleges that he has been denied Halal or Kosher meals since 2011. (Complaint, PageID 49–50). But he does not allege that he has been denied nutritionally adequate meals, and there is no suggestion that he is denied vegetarian meals. And,

as the apparently available "vegetarian meals are, in fact, Halal," he does not state an actual injury with respect to the denial of Halal meals. *Robinson,* 615 F. App'x at 313.

Plaintiff does allege here that he is in "a higher category of dietary requirements than the general Muslim population." (Complaint, PageID 49; *Compare* Doc. 204 in Case No. 2:16-cv-1020, PageID 1471, where Plaintiff told this Court that he was "an ordinary adherent to Islam . . . born in a regular American Muslim family that adheres to the mainstream doctrines of the religion practiced by 2 billion Muslims worldwide."). He does not articulate what those higher requirements are in his Complaint,[7] and his only requested relief is the re-establishment of a Halal or Kosher diet. (Complaint, PageID 49-50, 52). **As Plaintiff is not being denied Halal meals as discussed in *Robinson*, he has failed to state a claim on which relief may be granted. Count 14 should be dismissed on this basis.** (Complaint, PageID 49–50, 52).

The Undersigned notes that this is not a determination, at this initial screening stage, that the previous decisions in the 2016 Case are (or are not) entitled to preclusive effect here. *See generally United States v. United Techs. Corp.*, 782 F.3d 718, 725-26 (6th Cir. 2015) ("To establish issue preclusion, a party must show that: (1) the question in this case is the same as the one raised in the earlier litigation; (2) the answer given in the earlier litigation was necessary to the decision; (3) that decision was a final judgment on the merits; and (4) the affected party had a

---

[7] In the 2016 Case, Plaintiff asserted:

> Plaintiff is not a prison convert and has eaten halal/kosher all of his life. He was on kosher diet throughout his incarceration until it was taken away after his punitive transfer to BeCI. Defendants have refused to restore said meals offered to others. Because Plaintiff is a practicing "Sufi" he has dietary consideration beyond the institutional "non-pork" diet. His beliefs are well known and ardently held. No other option is available to him and the court should find balance of hardships favors this order. It should also be noted that the so-called "non-meat" diet only means no actual meat is served. The ingredients are not certified, nor even checked for other animal byproducts. Such as lectin (from hair), amino acids, animal gelatins. lactic acids, and "natural flavorings." But as stated above Plaintiff's argument is only to restore what was taken until conclusion of the suit.

(Motion for Preliminary Injunction, Doc. 34 in Case No. 2:16-cv-1020, PageID 260). Plaintiff does not develop this argument in the Complaint in this case or articulate what his religious beliefs require.

'full and fair opportunity' to litigate the issue in the prior litigation.  Issue preclusion applies to *issues* litigated in prior disputes.") (citations omitted) (emphasis in original).  This is a determination that the same law used by this Court and the Sixth Circuit to reject Plaintiff's request in the 2016 Case applies here as well and demonstrates why he has failed to state a claim.

The obvious overlap of issues between this case and the 2016 Case raises a few additional concerns, which are discussed in the following sections.  These concerns do not, at this time, lead the Undersigned to conclude that the claims must be dismissed, but the Parties should be prepared to address them in the future.

###    F.    The Doctrine of Res Judicata May Bar this Action

"The doctrine of *res judicata,* or claim preclusion, provides that a final judgment on the merits of an action precludes the 'parties or their privies from relitigating issues that were or could have been raised' in [that] prior action."  *Harris v. Ashley,* No. 97-5961, 1998 WL 681219, at *2 (6th Cir. Sept. 14, 1998) (per curiam) (internal citations omitted).  "The purposes of claim preclusion are to relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, prevent inconsistent decisions, encourage reliance on adjudication, and promote comity between the state and federal courts."  *Dubuc v. Green Oak Tw*p., 312 F.3d 736, 744 (6th Cir. 2002) (citing *Allen v. McCurry*, 449 U.S. 90, 94, 96 (1980)).

The doctrine applies not only to issues that were actually raised and litigated in a prior action, but also to any issues "which the parties, exercising reasonable diligence, might have brought forward at the time."  *Harris*, 1998 WL 681219, at *3 (internal citation and quotation omitted); *see also Parker v. Gibbons,* 62 F. App'x 95, 96 (6th Cir. 2003) (citing *J.Z.G. Res., Inc. v. Shelby Ins. Co.,* 84 F.3d 211, 213 (6th Cir. 1996)) ("Under claim preclusion, a final judgment on the merits bars any and all claims by the parties or their privies based on the same cause of

action, as to every matter actually litigated as well as *every theory of recovery that could have been presented*.") (emphasis added).

Consideration of a subsequent complaint is precluded under the res judicata doctrine if: (1) a final decision was rendered on the merits in the first action by a court of competent jurisdiction; (2) the subsequent action involves the same parties, or their privies, as the first action; (3) the second action raises issues or claims which were either actually litigated or should have been raised and litigated in the prior action; and (4) there is an "identity" between the causes of action to the extent the "claims arose out of the same transaction or series of transactions, or . . . the same core of operative facts." *Browning v. Levy,* 283 F.3d 761, 771-72, 773-74 (6th Cir. 2002) (internal citation and quotation omitted); *see also Rawe v. Liberty Mut. Fire Ins. Co.,* 462 F.3d 521, 528 (6th Cir. 2006).

As discussed above, Plaintiff made the same or similar claims in the 2016 Case in his Amended Complaint and other filings. But as the 2016 Case is not yet complete, the Undersigned declines to determine at this time whether res judicata would bar this action. The Undersigned notes that "[t]he fact that the plaintiff now asserts alternative theories of recovery and seeks a different remedy does not allow him to avoid claim preclusion, when these other theories could have been asserted and remedies could have been sought in the earlier action." *Hamilton v. State Farm Fire & Cas. Co.*, 127 F.3d 1102, 1997 WL 664772, *2 (6th Cir. 1997) (unpublished table case); *see also Wimber v. Jackson*, No. 3:19-cv-663, 2019 WL 5555543, at *4 (M.D. Tenn. Oct. 28, 2019) (citing *Gen. Elect. Med. Sys. Europe v. Prometheus Health*, 394 F. App'x 280, 283 (6th Cir. 2010)) (raising issue preclusion and noting that where "the precise issues were raised and actually litigated in Plaintiff's prior lawsuit[,] [t]he same claims cannot be relitigated by Plaintiff

in this or any other action in federal court, even if Plaintiff provides additional facts that he previously did not provide.").

Setting aside whether the doctrine of res judicata bars this action, the 2016 Case provides another piece of insight into Plaintiff's claims, specifically, about *when* his alleged injuries occurred. That issue is discussed next.

### G.    The Statutes of Limitations May Bar These Claims

In Section III.C, the Undersigned noted that some of Plaintiff's assertions could be construed as alleging that he was personally harmed in order to provide him standing to sue.

> Examples of this are: **[1]** the Tradition of Lamb Meat on the Eid al-Adha, which used to be budgeted for, but not ordered nor served at WDM contractor facilities.; **[2]** Coordination of Islamic prayer during Ramadan, which has been denied (delayed past its required time) upon opinions given by WDM Contractors (i.e.: inmates were forced to choose between eating the "Iftar" evening meal or praying "Magrib" evening prayer).; **[3]** The requirements of recitation of the "Kutba al-Hijr" in Arbic at the beginning of every Jummuah.; **[4]** The failure to order, or even accept donations of books, to support the proper education and spiritual development when those books do not support a Contractor's minority views.; Among many other issues.

(Complaint herein, PageID 41, ¶ 14 (numbers inserted)). Plaintiff raised these same concerns in the 2016 Case, over four years ago. Specifically, in his Amended Complaint in the 2016 Case, he said:

> An example of this is **[1]** the Tradition of Lamb Meat on the Eid al-Adha, which is budgeted for but not ordered nor served at WDM contractor facilities.; **[2]** coordination of Islamic prayer during Ramadan, which has been denied (delayed past its required time) upon opinions given by WDM Contractors and inmates were forced to choose between eating the "Iftar" evening meal or praying "Magrib" evening prayer.; **[3]** The requirement of recitation of the "Kutba al-Hijr" in Arabic at the beginning of every Jumah service.; **[4]** The failure to order, or even accept donations of books, to support the proper education and spiritual development.; All due to Defendant's preference for Christianity over Islam.

(Amended Complaint, Doc. 30 in Case No. 2:16-cv-1020, PageID 207–08, ¶ 53 (numbers inserted)). Although Plaintiff does not provide dates in his new Complaint for when these injuries

24

allegedly occurred, his earlier case establishes that Plaintiff knew about these alleged injuries by at least December 2018 when he filed that amended complaint. Moreover, the December 2018 Amended Complaint itself suggests that the events happened several years before that. Plaintiff notes that issues with the contractors were discussed "[b]etween March 2012 and December 2013." (Doc. 30 in Case No. 2:16-cv-1020, PageID 204). He specified that "[d]uring this year"— apparently "the mandatory 1 year waiting period between transfers"—after his March 2012 transfer to Madison Correctional Institute, he participated in religious services but had concerns about the contractors. (Doc. 30 in Case No. 2:16-cv-1020, PageID 200). Roughly consistent with this timeframe, Plaintiff's original complaint in the 2016 Case (filed in October 2016) referred to "[a] RLUIPA claim he's been collecting documentation for 3 years and would have filed next month." (Doc. 1 in Case No. 2:16-cv-1020, PageID 7–8). He described that intended challenge as a "RLUIPA claim challenging 72 REG 1 thru 12," and a "case [under] RLUIPA against DRC Policy 72 REG 1 thru 12." (Doc. 1 in Case No. 2:16-cv-1020, PageID 9, 11). He raised these "causes for this Court's determination under RLUIPA" in his Amended Complaint in the 2016 Case, "much of [which was] a direct challenge to the practices and policies of the" ODRC. (Doc. 30 in Case No. 2:16-cv-1020, PageID 197, 199; *compare* Complaint herein, Doc. 3, PageID 41 ("Plaintiffs' complaint is a direct challenge to practices and policies of the [ODRC]. This action relates to Declaratory Judgments raised but not addressed by this court within collateral complaint *Tolliver v. Noble* (Case No. 2: 16 - cv - 1020).").

Thus, it appears that Plaintiff knew of his alleged injuries almost a decade ago, and he filed the same or similar claims in this Court on December 3, 2018, more than four years prior to the December 29, 2022 Complaint before the Court now.[8]

---

[8] Plaintiff signed and submitted the Amended Complaint in the 2016 Case on November 19, 2018. (Doc. 30 in Case No. 2:16-cv-1020, PageID 225). He signed and submitted the Complaint in this case on November 24, 2022.

"Ordinarily, the limitation period starts to run when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Eidson v. State of Tennessee Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007) (citing *Kuhnle Bros., Inc. v. County of Geauga*, 103 F.3d 516, 520 (6th Cir.1997)).  The statute of limitations for a claim under § 1983 in Ohio is two years after the claim accrued. *Cooey v. Strickland*, 479 F.3d 412, 416 (6th Cir. 2007); *Harris v. German Twp.*, No. 3:19-cv-341, 2022 WL 866815, at *5 (S.D. Ohio Mar. 23, 2022). Thus, a § 1983 claim accruing in 2013 would ordinarily need to be brought within two years, or by 2015.

The statute of limitations for a claim under RLUIPA is four years; a claim accruing in 2013 would ordinarily need to be brought within two years, or by 2017. *Richardson v. Mohr*, No. 2:20-cv-4141, 2020 WL 4784666, at *2 (S.D. Ohio Aug. 18, 2020), *report and recommendation adopted*, 2020 WL 5230765 (S.D. Ohio Sept. 2, 2020) (citing 28 U.S.C. 1658(a)).

This also means that—in general terms—matters occurring more than two years before a complaint is filed will not support a § 1983 claim, and matters occurring more than four years before a complaint is filed will not support a RLUIPA claim.

Plaintiff alleges in his Complaint here that the ODRC policies and practices represent "an ongoing harm" to him. (Complaint, PageID 42, ¶ 19).  He may be alleging that there is a continuing violation that would nonetheless allow him to bring the claims at this time.

The test for determining whether a continuing violation exists is summarized as follows:

> First, the defendant's wrongful conduct must continue after the precipitating event that began the pattern.... Second, injury to the plaintiff must continue

---

(Complaint, Doc. 3, PageID 53).  Using these dates as the dates of filing under the "prison mailbox rule," it would still be apparent that the instant Complaint was filed more than four years after Plaintiff knew about the claims. *See Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008) (under the rule, "a pro se prisoner's complaint is deemed filed when it is handed over to prison officials for mailing to the court.").

to accrue after that event. Finally, further injury to the plaintiff[ ] must have been avoidable if the defendants had at any time ceased their wrongful conduct.

*Tolbert v. State of Ohio Dep't of Transp*., 172 F.3d 934, 940 (6th Cir.1999). *See also, Paschal v. Flagstar Bank*, 295 F.3d 565, 572 (6th Cir.2002). "[A] continuing violation is occasioned by continual unlawful acts, not continual ill effects from an original violation." *Tolbert*, 172 F.3d at 940 (quoting *National Advertising Co. v. City of Raleigh*, 947 F.2d 1158, 1166 (4th Cir.1991)). Passive inaction does not support a continuing violation theory. *Id.; Paschal*, 295 F.3d at 573.

*Eidson*, 510 F.3d at 636 (emphasis added). Potentially relevant here, the Sixth Circuit has held that the "continued enforcement of an unconstitutional statute cannot be insulated by the statute of limitations." *Kuhnle Bros.,* 103 F.3d at 522.

The Complaint here does not contain allegations that any Defendant took any action within the last two or four years. The only dates mentioned are the allegation that the ODRC has, "[o]ver the last two decades," acted in violation of RLUIPA and the constitution (Complaint, PageID 41), and the claim about the denial of Halal or Kosher meals in 2011 (Complaint, PageID 49–50), which should be dismissed for the reasons discussed above. Notably, Plaintiff does not allege that he sought and was denied Halal or Kosher meals at any time since 2011, although filings in the 2016 Case suggest he did so in 2015 and 2016. *See, e.g., Tolliver v. Noble*, No. 2:16-cv-1020, 2019 WL 2559512, at *5-7 (S.D. Ohio June 21, 2019), *report and recommendation adopted*, 2019 WL 3227948 (S.D. Ohio July 17, 2019) (discussing the parties' arguments and evidence on the issue).[9]

---

[9] This Court said:

Plaintiff asks the Court to order ODRC to provide him with a Halal/Kosher diet. (Doc. 34 at 2-3).
. . .
The Religious Land Use and Institutionalized Persons Act ("RLUIPA") "provides protection for 'institutionalized persons who are unable to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion.' " *Roberts v. Schofield*, No. 3:11-1127, 2014 WL 1028427, at *2 (M.D. Tenn. Mar. 18, 2014) (quoting *Cutter v. Wilkinson*, 544 U.S. 709, 721, (2005)). "Under RLUIPA, the inmate must present prima facie evidence that prison officials have substantially burdened his religious exercise." *Id*. (citing 42 U.S.C. § 2000cc-2(b)). Applying that same standard here, the Court must decide whether Plaintiff's vegetarian, rather than Halal or Kosher diet, "substantially burdens" his religious exercise.

Because Plaintiff has essentially refiled claims that he made several years ago, about events occurring years before that, some or all of his claims may be barred by the relevant statutes of limitations.  However, the Undersigned declines to make such a determination at this time based on the material currently in the record.

### H.    The Requests for Declaratory and Injunctive Relief May be Moot

"The Sixth Circuit has held that, generally, a § 1983 claim against a prison official becomes moot once the prisoner transfers from the facility that formed the basis of the prisoner's complaints."  *Settle v. Parris*, No. 3:19-cv-32, 2021 WL 1566074, at *5 (E.D. Tenn. Apr. 21, 2021) (citing *Henderson v. Martin*, 73 F. App'x 115, 117 (6th Cir. 2003); *Graham v. Mercer*, 198 F.3d 245, 245 (6th Cir. 1999) ("A prisoner's request for injunctive and declaratory relief is moot upon his transfer to a different facility."); and *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) ("to the extent Kensu seeks declaratory and injunctive relief his claims are now moot as he is no longer confined to the institution that searched his mail")); *See also Lowe v. Oppy*, No. 2:14-cv-535, 2015 WL 1439345, at *2 (S.D. Ohio Feb. 10, 2015), *report and recommendation adopted*, 2015 WL 1439325 (S.D. Ohio Mar. 27, 2015) (collecting cases).  "To determine whether a request for declaratory relief is moot, we ask whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient

---

ODRC prisons offer vegetable and non-pork meals to Muslim inmates, like Plaintiff. (Doc. 46-10 at ¶ 7).  Prepackaged Kosher meals are served to inmates who have been approved by the Religious Service Administrator for religious meal accommodations. (*Id.*, ¶ 9). There are currently 136 inmates with approved kosher meal accommodations. (*Id.*). Plaintiff first requested Kosher meals in 2015 and Halal meals in 2016. (*Id.*, ¶ 10). Plaintiff's requests, however, were denied because "ODRC currently provides meal accommodation in the form of either non-pork or vegetarian meals for Muslims." (*Id.*).

*Tolliver v. Noble*, No. 2:16-cv-1020, 2019 WL 2559512, at *5–7 (S.D. Ohio June 21, 2019) (report and recommendation).

28

immediacy and reality to warrant the issuance of a declaratory judgment." *Thompson v. DeWine*, 7 F.4th 521, 524 (6th Cir. 2021), *cert. denied*, 142 S. Ct. 1233 (2022) (cleaned up).

As this Court previously noted, "Plaintiff is an inmate at Grafton Correctional Institution, who has previously been incarcerated at London Correction Institution ('LoCI'), Madison Correctional Institution ('MaCI'), Belmont Correctional Institution ('BeCI'), Ross Correctional Institution ('RCI'), and Pickaway Correctional Institution ('PCI')." *Tolliver v. Noble*, No. 2:16-cv-1020, 2022 WL 843573, at \*1 (S.D. Ohio Mar. 22, 2022), *appeal dismissed sub nom. Tolliver v. Foley*, No. 22-3382, 2022 WL 2919958 (6th Cir. May 18, 2022). His conflicts with religious contractors appear to have occurred "[i]n approximately 2012 through 2014, while incarcerated at Madison Correctional Institution ('MaCI')." *Id.*

Plaintiff was transferred to Grafton Correctional Institution in early 2020. (*See* Doc. 76 in Case No. 2:16-cv-1020 (notice of new address, dated Feb. 3, 2020)). He still resides there, according to the Complaint in this case. (Complaint, PageID 40, ¶ 4). Because the Complaint does not specify exactly when or where the issues described therein occurred, and given that the claims are raised against the ODRC and its Director rather than a particular institutional actor, *see Lowe*, 2015 WL 1439345, \*2, the Undersigned declines to make a determination about mootness during this screening. The Parties should be prepared to address the issue later in the case.

## IV.    <u>Summary and Recommendation</u>

Plaintiff's Complaint in this case largely echoes claims he made in the 2016 Case, but as against two new Defendants. Some of the claims should be dismissed at this time. Having screened the Complaint as required by 28 U.S.C. § 1915(e)(2) and 28 U.S.C. § 1915A(a), the Undersigned **RECOMMENDS** that this Court:

A.    **DISMISS** all claims raised against the ODRC pursuant to 42 U.S.C. § 1983, as the ODRC is not a "person" subject to suit under that statute;

B. **DISMISS** all claims raised on behalf of other Muslim inmates, as Plaintiff lacks standing to raise claims on their behalf;

C. **DISMISS** Counts 3–6 seeking a declaration that religious groups of which Plaintiff is not a member deserve their own policies, as Plaintiff lacks standing to raise these claims;

D. **DISMISS** all claims raised under § 1983 alleging that the ODRC policies were not followed (possibly part of Counts 2 and 8), as the violation of state policy is outside the scope of § 1983;

E. **DISMISS** Count 14 concerning the provision of Halal or Kosher meals, as Plaintiff has failed to allege an actual injury sufficient to state a claim;

F. **ALLOW** the following claims to **PROCEED** at this time, and subject to further order of Court:

    1. The claim against the ODRC under RLUIPA, and

    2. The claims against Director Chambers-Smith under § 1983 and RLUIPA.

    These claims appear to correspond to <u>Counts 1–2 and 7–13</u> in the Complaint, as narrowed above.

G. **CERTIFY** pursuant to 28 U.S.C. § 1915(a)(3) that, for the reasons discussed above, an appeal of any Order adopting this Report and Recommendations would not be taken in good faith, and therefore, deny Plaintiff leave to appeal *in forma pauperis. See McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997).

The Undersigned will order service of process on Defendant(s) if appropriate once the Court considers this Report and Recommendation and any objections to it. Plaintiff is **ADVISED** that he must keep this Court informed of his current address, and promptly file a Notice of New Address if he is released or transferred.

## V.    <u>Notice Regarding Objections to this Report and Recommendation</u>

If any party objects to this Report and Recommendation ("R&R"), the party may serve and file specific, written objections to it **WITHIN FOURTEEN DAYS** after being served with a copy thereof. Fed. R. Civ. P. 72(b). All objections shall specify the portion(s) of the R&R objected to

and shall be accompanied by a memorandum of law in support of the objections.  The Court may extend the 14-day objections period if a timely motion for an extension of time is filed.

A Judge of this Court will make a de novo determination of those portions of the R&R to which objection is made.  Upon proper objection, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions.  28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the R&R will result in a waiver of the right to have the District Judge review the R&R de novo, and will also operate as a waiver of the right to appeal the decision of the District Court adopting the R&R.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).


Date: April 17, 2023                           /s/ Kimberly A. Jolson
                                               KIMBERLY A. JOLSON
                                               UNITED STATES MAGISTRATE JUDGE