UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

KEVIN A. TOLLIVER,

        Plaintiff,

   v.                                  Civil Action 2:22-cv-4567
                                         Judge Edmund A. Sargus, Jr.
OHIO DEPARTMENT OF                Magistrate Judge Kimberly A. Jolson
REHABILITATION AND CORRECTIONS,
*et al.,*

        Defendants.

## REPORT AND RECOMMENDATION

This matter is before the Court on Plaintiff's Motion for Order to Show Cause and Emergency Temporary Injunction/Restraining Order (Doc. 15). For the following reasons, the Undersigned **RECOMMENDS** that Plaintiff's Motion be **DENIED.**

## I.    BACKGROUND

Elsewhere, the Court has summarized Plaintiff's claims. (*See* Doc. 4 at 3–8). Briefly, Plaintiff brings claims against the Ohio Department of Corrections (ODRC) and various other Defendants under 42 U.S.C. § 1983, the Religious Land Use and Institutionalized Persons Act (RLUIPA), and the Fourteenth Amendment's Equal Protection Clause. (*See* Doc. 9 at 11 (*adopted by* Doc. 14 at 9)). His claims arise out of alleged religious rights violations affecting Muslim prisoners in Ohio. Plaintiff is a state prisoner at Grafton Correctional Institution (GCI) proceeding without the assistance of counsel.

Most recently, District Judge Edmund A. Sargus, Jr., adopted the Undersigned's Reports and Recommendations, allowing some of Plaintiff's claims to proceed. (*See generally* Doc. 14). Four days later, Plaintiff filed a Motion for Order to Show Cause and Emergency Temporary

Injunction/Restraining Order (Doc. 15). In the Motion, Plaintiff requests two temporary restraining orders (TROs) for alleged inadequacies with ODRC's Ramadan meal plan and a lack of Jumu'ah services at Ohio prisons. (Doc. 15 at 1).

## II.    STANDARD

"The standard for addressing a motion for a temporary restraining order is the same as the standard applied to a motion for a preliminary injunction." *Ferron v. Search Cactus, L.L.C.*, No. 2:06-cv-327, 2007 WL 2110497, at *1 (S.D. Ohio July 13, 2007) (citation omitted). Both are extraordinary measures, and the movant must meet a high burden to show that such a measure is justified. *See ACLU v. McCreary Cty.*, 354 F.3d 438, 444 (6th Cir. 2003); *Kendall Holdings, Ltd. v. Eden Cryogenics LLC*, 630 F. Supp. 2d 853, 860 (S.D. Ohio 2008). Indeed, the proof required to obtain this relief "is much more stringent than the proof required to survive a summary judgment motion." *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000). Accordingly, the movant must show more than factual issues—he "must affirmatively demonstrate [his] entitlement to injunctive relief." *Davis v. Caruso*, No. 07-11740, 2008 WL 878878, at *3 (E.D. Mich. Mar. 28, 2008).

When considering whether to grant this extraordinary relief, a district court must balance four factors:

> (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction.

*City of Pontiac Retired Emps. Ass'n v. Schimmel*, 751 F.3d 427, 430 (6th Cir. 2014) (en banc) (citation and internal quotation marks omitted).

Under the first factor, to establish a strong likelihood of success on the merits, the movant must demonstrate "more than a mere possibility" of success. *Nken v. Holder*, 556 U.S. 418, 435 (2009). This means that the movant must "show, at a minimum, serious questions going to the

merits" of his claims. *Dodds v. United States Dep't of Educ.*, 845 F.3d 217, 221 (6th Cir. 2016) (internal quotation marks and citation omitted). The first factor can be determinative:

> [C]ourts have often recognized that the first factor is traditionally of greater importance than the remaining three. *See Roth v. Bank of the Commonwealth,* 583 F.2d 527, 537 (6th Cir. 1978). In fact, the Sixth Circuit has held that when the proponent of the injunctive relief has no chance of success on the merits of the claim, the Court may dismiss the motion without considering the other three factors. *See Michigan State AFL–CIO v. Miller,* 103 F.3d 1240, 1249 (6th Cir. 1997). Failure to do so is reversible error. *See id.; Sandison v. Michigan High School Athletic Ass'n,* 64 F.3d 1026, 1037 (6th Cir. 1995).

*Stanley v. Ohio Dep't of Rehab. & Corr.*, No. C2–02–178, 2002 WL 31409435, at *3 (S.D. Ohio August 12, 2002) (denying motion for injunctive relief after evaluation only of chance of success on the merits factor); *see also City of Pontiac Retired Emps. Ass'n*, 751 F.3d at 430 ("When a party seeks a preliminary injunction on the basis of a potential constitutional violation, the likelihood of success on the merits often will be the determinative factor.").

Under the second factor, the movant "must show that irreparable harm absent injunctive relief is 'both certain and immediate, rather than speculative or theoretical.'" *Kensu v. Borgerding*, No. 16-13505, 2018 WL 6540262, at *4 (E.D. Mich. Oct. 31, 2018), *report and recommendation adopted*, No. cv 16-13505, 2018 WL 6527782 (E.D. Mich. Dec. 12, 2018) (quoting *Michigan Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 154 (6th Cir. 1991)); *see also Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (noting that "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy"); *Friendship Materials, Inc. v. Mich. Brick, Inc.*, 679 F.2d 100, 105 (6th Cir. 1982) (noting that "[a] district court abuses its discretion when it grants a preliminary injunction without making specific findings of irreparable injury").

3

Under the third and fourth factors—harm to others and the public interest—the context of the case matters. In a prisoner civil rights case like this one, "[p]rison administrators [ ] should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish*, 441 U.S. 520, 521 (1979). Consequently, "courts, especially federal courts, should be reluctant to become involved in the internal administration" of correctional institutions. *Hanna v. Toner*, 630 F.2d 442, 444 (6th Cir. 1980).

Finally, in addition to the above factors, Plaintiff's case is also subject to § 802 of the Prison Litigation Reform Act (the "PLRA"), which requires preliminary injunctive relief to "be narrowly drawn, extend no further than necessary to correct the harm justifying preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2).

## III.    DISCUSSION

Plaintiff's Motion centers on two issues: the adequacy of the upcoming meal plan for Ramadan and the absence of Jumu'ah services at ODRC facilities. Because Plaintiff fails to meet the high burden for a TRO, the Undersigned **RECOMMENDS** that his Motion be **DENIED**.

### A.    Ramadan Meals

Plaintiff says he "has been informed by ODRC of the menu for this Ramadan." (Doc. 15 at 1). According to Plaintiff, ODRC will provide Muslim prisoners fasting in observation of Ramadan with "one hot meal that is augmented with additional calories to reach a specific count[.]" (*Id.* at 2). Plaintiff takes issue with the types of food used to boost the calorie count of that one meal. He says that the meals will "consist of white bread, rehydrated potatoes, and pasta; with less fruit, vegetables and meat protein[.]" (*Id.*). Further, Plaintiff states that vegetarian meals will consist of "smaller portions" and larger amounts of soy, which may cause gastrointestinal issues.

(*Id.*).  Because of this, Plaintiff argues that Muslim prisoners eating vegetarian meals will have to perform ritual washing more often.  (*Id.*).

Up front, the Court reminds Plaintiff that he may bring claims raised on his own behalf only.  (*See* Doc. 4 at 10–11 (dismissing claims Plaintiff attempted to raise on behalf of other Muslim prisoners)).  In his discussion of the Ramadan meal plan, Plaintiff complains about both the vegetarian and non-vegetarian meals, but he does not identify which meal plan he will receive. This failure alone is likely enough for this portion of Plaintiff's Motion to fail because Plaintiff fails to describe what harm he will face if his Motion for a TRO is not granted.  (*See* Doc. 4 at 11 ("Plaintiff's claims and arguments in this case should therefore be 'limited to alleged violations of his own constitutional rights.'") (quoting *Dodson v. Wilkinson*, 304 F. App'x 434, 438 (6th Cir. 2008))); *see also Jarrett v. Greene*, 1:22-cv-456, 2022 WL 3354152, at *3 (S.D. Ohio Aug. 15, 2022) (denying a TRO and noting that Plaintiff did not allege how a change in security level would cause him irreparable injury).

And Plaintiff's efforts to enjoin the meal plan fail for other reasons.  As previously stated, a movant for a TRO must show that his underlying claims have a "strong likelihood of success on the merits." *City of Pontiac Retired Emps. Ass'n*, 751 F.3d at 430.  Plaintiff's Complaint brought claims against Defendants under the First Amendment, RLUIPA, and the Fourteenth Amendment's Equal Protection Clause.  (*See* Docs. 3, 8).  While Plaintiff does not identify the legal bases for his TRO, the only halal meal claims proceeding in this case are those based in the Equal Protection Clause.  (Doc. 15 at 6 (stating generally that government officials should "obey the constitution and other laws"); Doc. 9 at 7–8 (recommending Plaintiff's expanded equal protection claims "with respect to Halal or kosher meals and with respect to treatment of Plaintiff as a Muslim inmate generally" be allowed to proceed)); *see also Frost v. Stalnaker*, 1:09-cv-662,

2009 WL 3873666, at *2 (S.D. Ohio Nov. 18, 2009) ("A court may not grant a preliminary injunction when the issues raised in the motion are entirely different from those raised in the complaint." (citations omitted)). But regardless, under the First Amendment, RLUIPA, or the Equal Protection Clause, Plaintiff's Motion as it relates to the Ramadan meal plan should be denied.

### 1. Likelihood of Success on the Merits

First, the Sixth Circuit has held that vegetarian meals are halal, *Robinson v. Jackson*, 615 F. App'x 310, 313 (6th Cir. 2015) (citing *Abdullah v. Fard*, 173 F.3d 854, at *1 (6th Cir. 1999)), and Plaintiff has not alleged that either Ramadan meal plan is nutritionally inadequate. Rather, Plaintiff takes issue with the types of foods served with each. (*See* Doc. 15 at 2). While prisoners have the right to receive nutritionally adequate meals that do not violate their religious beliefs, "there is no constitutional right for each prisoner to be served the specific food he desires—such as Halal meat—in prison." *Robinson*, 615 F. App'x at 314 (citing *Spies v. Voinovich*, 173 F.3d 398, 406–07 (6th Cir. 1999)). As such, Plaintiff has not shown a substantial likelihood that he will succeed on any meal-related claims rooted in the First Amendment.

More still, the Sixth Circuit has extended this reasoning to claims under RLUIPA. *Id.* at 313. And while Plaintiff seemingly says that gastrointestinal issues may cause individuals on a vegetarian diet to engage in excessive washing, he does not say he follows a vegetarian diet or that he will be burdened in this manner. *Cf. Kitchen v. Leach*, 1:17-cv-371, 2017 WL 1905871, at *7 (W.D. Mich. May 10, 2017) (allowing a claim to proceed under the First Amendment and RLUIPA where the plaintiff alleged that his vegan diet imposed by Defendants caused him to undertake onerous methods to maintain purity for prayer). Therefore, Plaintiff has also failed to show a strong likelihood of success on any claims related to these allegations based on RLUIPA.

Finally, Plaintiff has not demonstrated a strong likelihood of success on his Equal Protection claims arising out of his Motion's allegations. Plaintiff does not allege that he will be denied a halal diet during Ramadan out of "intentional or purposeful discrimination." *Robinson*, 615 F. App'x at 314–15. Indeed, nowhere in his Motion does Plaintiff allege that the meals being provided during Ramadan are not halal. (Doc. 15 at 1–2). Nor does he allege sufficient facts to show a strong likelihood that Defendants "selected or reaffirmed [the meal plan] at least in part *because of*, not merely in spite of, its adverse effects" upon Muslim prisoners. *Conway v. Purves*, 13-10271, 2016 WL 11474792, at *9 (E.D. Mich. Aug. 1, 2016) (citing *McCleskey v. Kemp*, 481 U.S. 279, 298 (1987)) (granting summary judgment where a prisoner failed to allege discriminatory intent behind a prison's Ramadan menu). Instead, Plaintiff generally asserts that the "ODRC Defendants" want to "dissuade participation in non-Christian religions," without support and without identifying which Defendants act with this intent. (Doc. 15 at 1–2). Without more, Plaintiff's general statements are not enough to support allegations of intentional or purposeful discrimination. *See Dentigance v. Eberlin*, No. 2:06-cv-486, 2008 WL 618789, at *5 (S.D. Ohio Mar. 3, 2008) (finding conclusory statements of racial motivations not enough to support an equal protection claim).

Still more, precedent casts doubt on the likelihood of success for Plaintiff's equal protection claims based on the treatment of prisoners observing Ramadan versus non-fasting prisoners. *See Pleasant-Bey v. Tenn. Dep't of Corrs.*, No. 18-5424, 2019 WL 11880267, at *4 (6th Cir. Apr. 4, 2019) ("The district court correctly concluded that Pleasant-Bey could not maintain an equal protection claim comparing the treatment of Muslim inmates and general population inmates because those groups were not similarly situated with respect to religious diets and fasting."); *Kyle v. Skipper*, No. 1:20-cv-472, 2020 WL 3542149, at *4 (W.D. Mich. June 30,

2020) ("Plaintiff wholly fails to demonstrate that he was treated differently than other similarly situated prisoners. . . . Plaintiff was not similarly situated to prisoners who received their meals in the chow hall during the month of Ramadan. In order to observe his religious fast, Plaintiff could not attend the regular chow hall or eat during normal meal hours, but instead requested and received bagged meals to be consumed after sunset."). Therefore, Plaintiff has failed to show a strong likelihood of success on the merits of his equal protection claims.

### 2. Remaining Factors

Briefly, the remaining three factors cannot overcome the determinative force of Plaintiff's failure to demonstrate a likelihood of success on the merits. Under the second factor, whether Plaintiff will suffer irreparable injury absent injunctive relief, Plaintiff "must show that irreparable harm is 'both certain and immediate, rather than speculative or theoretical.'" *Kensu*, 2018 WL 6540262, at *10 (quoting *Griepentrog*, 945 F.2d at 154). As discussed above, Plaintiff has not stated that he will receive non-halal meals or an inadequate caloric intake. *Cf. Conway v. Purves*, 963 F. Supp.2d 708, 711 (E.D. Mich. 2013) (noting a judge held in another case that plaintiffs showed irreparable harm would occur where a Ramadan's meal plan included only 1,149 calories per day).

For the third and fourth factors, while a temporary restraining order in this case is unlikely to substantially harm others, the Undersigned "must be mindful of the cautions that apply to issuing an injunction that affects the operation of the prison system, which also shows that the public interest would not be served by issuing the injunction." *Carter v. Mich. Dep't of Corr.*, 2013 WL 5291567, at *6 (E.D. Mich. Sep. 19, 2013). In other words, "[t]he public interest in leaving the administration of [prisons to prison administrators] is another factor weighing against" a temporary restraining order here. *Winn v. Waugaman*, No. 0:14-cv-169-HRW, 2015 WL 1606151, at *5

(E.D. Ky. Apr. 8, 2015). While Plaintiff argues that "[i]t is always in the public interest for government officials, including prison personnel, to obey the constitution and other laws," he does not identify cases where courts have found similar conduct unconstitutional or unlawful, considering Defendants are seemingly providing halal meals with adequate nutritional intake for Ramadan.

Plaintiff has failed to show a strong likelihood of success on the merits and that the purported harm he faces is irreparable, and because courts must be reluctant to become involved in the administrative decisions of prisons, the Undersigned **RECOMMENDS** that Plaintiff's Motion as it pertains to the Ramadan meal plan be **DENIED**.

### B.     Jumu'ah Services

Next, Plaintiff requests a preliminary injunction based on the lack of Jumu'ah services at his prison and others across Ohio. (Doc. 15 at 3–4). Plaintiff alleges that the lack of services is due to various failures with Defendants' contracts with Islamic service providers. (*Id.*). Plaintiff also says that he has not had services for nine consecutive weeks because prisoners are not allowed to perform Jumu'ah services themselves if a contractor does not show up. (*Id.*). His Motion asks that Defendants be ordered to provide Jumu'ah services every Friday. (*Id.* at 5). If a contractor is unavailable on a Friday, Plaintiff asks the Court to order prison staff to supervise Muslim prisoners as they "self-perform" the service. (*Id.*).

#### 1.    Likelihood of Success on the Merits

Previously, this Court allowed some of Plaintiff's claims related to issues with Jumu'ah services to proceed. (*See* Doc. 4 at 7–8, 3; Doc. 14 at 9). In Plaintiff's present Motion, he describes the following issues with Jumu'ah services:

> [T]hough Jummuah services are budgeted for by the ODRC, and contracts are in place with Islamic Services Providers, Plaintiff has had Jummuah only about one

time per month over the last 12 years with only a few exceptions. There has been no Jummuah at GCI/GRC for 9 consecutive weeks preceding this requested TRO.

The complaint argues the entire arrangement; contracts, preferred group of contractors from minority communities, treatment of contractors or volunteers from ordinary communities, make the contracts untenable to mainstream Imams and are used by ODRC defendants to impede the growth of mainstream Islam in Ohio prisons. That ODRC and many of the Contractors have little or no ties to normative communities around Ohio and the ODRC has not only failed to fostered relationships with those Mosques within their regional catchment areas, but have neglected or abused those communities. Further, the contracts and policy stand as the greatest impediment to services. This is due to the fact that when there is a Contractor with multiple contracts he cannot be in multiple places at one time, and there is no mechanism to allow an alternative (such as inmate self-performance of services) if he does not show up. The truth is inmates are often self-performing (leading) the Jummuah services even when a contractor is present because many of the contractors are unable or unwilling to perform the rites and rituals. It is even the case that some of the contractors do not hold the rights necessary and even if asked to perform them will refuse. The reality is that the ODRC has the system it wants in place and desires status quo.

(Doc. 15 at 2–3).

In deciding this Motion, the Court takes judicial notice of Plaintiff's previous action in this Court: *Tolliver v. Noble*, 2:16-cv-1020 (S.D. Ohio). In that case, Plaintiff brought claims against Defendant Davis, along with other named defendants and various Jane and John Does, alleging the following related to Jumu'ah services at Ohio prisons:

During this year the Plaintiff attended, or attempted to attend, every Friday (Jumah) service in accordance with his faith requirements . . . offered at MaCI as contracted for pursuant to ODRC policy.

It was immediately obvious that these services were either not being provided, or when they were attempted were not timely due to Islamic Services Provider. . . . being constantly late or absent and a failure to supervise by ODRC/MaCI Defendants.

When the contractor did attend, his performance did not conform to the minimum necessary standards to be considered a religiously valid Jumah service pursuant to the criteria required by normative/mainstream Islamic communities worldwide.

A major cause of this Breach of contract and denial of services is that various defendants award multiple contracts to one contractor without sufficient screening

or supervision to insure providers are qualified to perform the rites and rituals, or that they possess resources and desire to timely serve mainstream and/or normative adherents of the Islamic faith.

[T]wo men cannot be reasonably expected to provide Friday afternoon Jumah service at up to 8 prisons spread across Southern Ohio. For ordinary Muslims Jumah has a very specific and relatively limited time period in which it must be performed and managing two such contracts, even if at one facility (such as MaCI), is next to impossible for one man. One congregation will suffer, as have the value of said contracts, making them less appealing to others.

All of this has created a breach of contract and denial of the services contracted for, as is more fully expressed in Plaintiff's grievances attached (here) by reference as if rewritten, for if re-written it would only be the same, and this conduct continues today at multiple prisons where mainstream and non-blacks are not served according to their basic religious need.

Defendants (ODRC Administrators and staff) by selecting WDM contractors for normative services is similar to placing an evangelical minister over an orthodox Catholic congregation. Defendants WDM Contractors neither feel the technical requirements are necessary, nor are they adept at performing them properly thus denying service, and policies are insufficient to resolve the problem.

Amended Complaint at ¶¶ 18, 19, 20, 23, 26, 30, 31, *Tolliver v. Noble*, No. 2:16-cv-1020 (S.D. Ohio Dec. 3, 2018), ECF No. 30.

In that previous action, several defendants, including Defendant Davis, moved for judgment on the pleadings, and the Court granted the motion. *See Tolliver v. Noble*, No. 2:16-cv-1020, 2020 WL 4260950 (S.D. Ohio July 24, 2020), *report and recommendation adopted*, No. 2:16-cv-1020, 2021 WL 210450 (S.D. Ohio Jan. 21, 2021). The Court discussed the "gaps" in Plaintiff's pleadings and did not allow him to amend his complaint to remedy them, because the case had been pending for four years, Plaintiff had previous opportunities to amend his complaint, and an amendment would have been futile. *Id.* at *4.

Here, the Court notes the obvious similarities between Plaintiff's previous complaint and the allegations in his present Motion. Again, Plaintiff challenges ODRC's policies and contracts with Islamic service providers and the resulting quality and availability of Jumu'ah services.

11

Because of these similarities, the Court previously discussed that Plaintiff's claims may be barred by the doctrine of res judicata.  (*See* Doc. 4 at 22–24 (noting that res judicata applies to issues that parties should have litigated in previous cases and that Plaintiff raised the same or similar claims in his 2016 case); Doc. 9 at 8 (stating that the Undersigned reserved res judicata issues for the parties to address later in litigation)).  The Court also opined that the statute of limitations may bar Plaintiff's claims.  (Doc. 4 at 24–28).

Again, at this time, the Court does not determine whether Plaintiff's Jumu'ah services claims are barred by res judicata or the statute of limitations.  Nonetheless, serious concerns remain about Plaintiff's likelihood of success on the merits.  *See Fletcher v. Fed. Nat. Mortg. Ass'n*, No. 3:11-cv-83, 2011 WL 1337422, at *3 (S.D. Ohio Mar. 18, 2011) (denying plaintiffs' motion for a TRO where "both res judicata and the statute of limitations present[ed] significant hurdles" to success); *Hazel v. Wells Fargo Bank*, No. 2:16-cv-1096, 2016 WL 6996203, at *3 (S.D. Ohio Nov. 30, 2016) (finding res judicata can apply where a plaintiff failed to sufficiently plead an argument in a previous case's complaint).  More still, jurisprudence from across the country also puts these claims' viability into question.  *See, e.g.*, *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 351–52 (1987) (finding that prison officials are not required by the Constitution to "sacrifice legitimate penological objectives" to allow Jumu'ah services when prisoners "are not deprived of all forms of religious exercise"); *Jihad v. Fabian*, 680 F. Supp.2d 1021, 1033 (D. Minn. 2010) ("The Plaintiff argues that the Defendants' failure to hire a Muslim Chaplain is a substantial burden on his religious practice. We disagree. First Amendment jurisprudence is clear that prisoners do not have a constitutional right to a unique religious leader for each sect in the prison.") (citing cases); *see id.* (holding that a prison's refusal to let prisoners lead Jumu'ah services did not violate RLUIPA, even though services were regularly cancelled); *Pleasant-Bey v. Shelby Cty.*, No. 18-

6063, 2019 WL 11769343, at *4 (6th Cir. Nov. 7, 2019) (finding that a jail's policy prohibiting prisoners from conducting religious services did not violate the First Amendment).

Thus, Plaintiff has failed to establish a strong likelihood of success on the merits of these claims, and this factor weighs against the issuance of a TRO.

### 2. Other Factors

The other factors do not weigh strongly enough in favor of Plaintiff to overcome his failure to show a strong likelihood of success on the merits. While the absence of religious services may amount to an irreparable harm, the issuance of a TRO in this case could interfere with prison security and administration. For example, in his Motion, when religious contractors are unavailable, Plaintiff asks that prisoners be allowed to lead services under the supervision of prison staff. (Doc. 15 at 5). But the Sixth Circuit has previously held that prohibiting prisoners from leading religious groups serves valid security purposes. *See Pleasant-Bey*, 2019 WL 11769343, at *4. And although Plaintiff requests that a prison staff member be present when a contractor is absent, such a request implicates staffing allocation for the prison. "Federal courts' intrusion into the administration of state prison operations is disruptive and thus generally not in the public interest." *Sango v. Sohlden*, No. 2:16-cv-18, 2016 WL 4213721, at *1 (W.D. Mich. Aug. 10, 2016). So the third and fourth factors, too, weigh against Plaintiff.

Because factors one, three, and four weigh against Plaintiff, his Motion for a TRO based on the alleged inadequacies of Jumu'ah services (Doc. 15) should be **DENIED**. This case will instead proceed to service and the discovery phase.

## IV. CONCLUSION

For the foregoing reasons, the Undersigned **RECOMMENDS** that Plaintiff's Motion (Doc. 15) be **DENIED**. The Court reminds Plaintiff that he must submit United States Marshal

and summons forms for Defendants Urrah and Davis to the Court by March 6, 2024.  (*See* Doc. 16).

      IT IS SO ORDERED.

Date:  February 28, 2024              /s/ Kimberly A. Jolson
                                        KIMBERLY A. JOLSON
                                        UNITED STATES MAGISTRATE JUDGE