UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**KEVIN A. TOLLIVER,**

      **Plaintiff,**

   v.                                Civil Action 2:22-cv-4567
                                        Judge Edmund A. Sargus, Jr.
**OHIO DEPARTMENT OF**          Magistrate Judge Kimberly A. Jolson
**REHABILITATION AND**
**CORRECTIONS,** *et al.,*

      **Defendants.**

## REPORT AND RECOMMENDATION

Before the Court is Defendants' First Motion to Dismiss. (Doc. 23). For the following reasons, the Undersigned **RECOMMENDS** that the Motion be **DENIED**.

**I.    BACKGROUND**

Plaintiff, who proceeds *pro se*, is incarcerated at Grafton Correctional Institution (GCI). (Doc. 1 at 2). Plaintiff is no stranger to litigation in this District. (Case Nos. 2:06-cv-904, 2:06-cv-908, 2:06-mc-36, 2:07-cv-6, 2:07-cv-17, 2:08-cv-722, 2:16-cv-1020, 2:17-cv-806, 2:22-cv-4566, 2:22-cv-4567). Relevant here, in 2016, he filed an action against various Ohio Department of Rehabilitation and Corrections (ODRC) employees and contractors, including Defendant Davis. (Case No. 2:16-cv-1020, Doc. 86 at 1). Plaintiff alleged the 2016 Defendants "retaliated against him in violation of the First Amendment, violated his right to practice his religion, denied him access to the courts, and [were] liable for numerous state law contract and tort claims." (*Id.* at 3). Specifically, Plaintiff said Defendants Abdul Rahman Shahid and Sunni Ali Islam, who worked as Islamic Services Providers in the prisons where Plaintiff was housed, failed to adequately perform Jumu'ah services and other religious duties. (Case No. 2:16-cv-1020, Doc. 30 at 5–6, 12–

13). Plaintiff also alleged that other Defendants, who were ODRC staff and administrators, "award[ed] service contracts to contractors from minority sects [of Islam]" who fail to "serve [the] normative group." (*Id.* at 6–7). Their conduct, in Plaintiff's eyes, denied "Muslim inmates basic religious rights." (*Id.* at 12). For instance, Plaintiff said that Muslim prisoners were forced to choose between evening meals and prayers, lacked access to religious texts, and could not participate in certain services and traditions. (*Id.* at 12–13 ("An example of this is the Tradition of Lamb Meat on the Eid al-Adha, which is budgeted for but not ordered nor served at WDM contractor facilities; coordination of Islamic prayer during Ramadan, which has been denied . . . . Inmates were forced to choose between eating the 'Iftar' evening meal or praying 'Magrib' evening prayer; The requirement of recitation of the 'Kutba al-Hijr' in Arabic at the beginning of every Jumah service; The failure to order, or even accept donations of books . . . ." (cleaned up))). Plaintiff also alleged the inadequate services and resources for Muslim prisoners resulted from ODRC's policies and a preference for Christianity. (*Id.* at 12–13).

Eventually, all Defendants besides Christler, Sibalski, Shahid, and Islam were dismissed on the pleadings. (Case No. 2:16-cv-1020, Doc. 117 at 6). Then, the Court granted summary judgment in favor of Defendants Christler, Sibalski, and Islam. (*See* Case No. 2:16-cv-1020, Docs. 172, 183 (adopting Doc. 172)). Finally, Plaintiff received a judgment at trial against Defendant Shahid. (Case No. 2:16-cv-1020, Doc. 258).

On December 29, 2022, Plaintiff filed the instant case, which contains similar allegations as those raised in the 2016 action. (Doc. 1). He sues ODRC, ODRC Director Annette Chambers-Smith, Chief of Religious Services Mike Davis, Chief of Holistic Services Jennifer Urrah, and various John and Jane Does under 42 U.S.C. § 1983, the Religious Land Use and Institutionalized

2

Persons Act (RLUIPA), and state law. (Doc. 14 at 4). The Court previously summarized Plaintiff's allegations:

> Plaintiff describes the Complaint in this action as "a direct challenge to practices and policies of the [ODRC]." (Complaint, PageID 40). . . . . He alleges violations of his "First Amendment rights under the United States Constitution in regard to freedom of religion and violations of protections against establishment of religion." (Complaint, PageID 39). More specifically, he asserts that the ODRC policies and practices are ineffective and insufficient to lead to the hiring of qualified contractors/service providers to serve the Islamic community within Ohio's prisons. (*See* Complaint, PageID 41–42). This leads, says Plaintiff, to the denial of certain religious services, and "constitute[s] religious persecution, denial or infringement of religious rights, and an establishment of religion in favor of both Christianity and the [WD Muhammad] style of practice, which is an ongoing harm to Plaintiff and all similarly situated mainstream adherents to the Islamic faith in Ohio prisons." (Complaint, PageID 42, ¶ 19).
>
> Plaintiff appears to base this conclusion, at least in part, on the fact that there are "no Muslim employees anywhere in the Religious Services Departments of ODRC, qualified by advanced education in Islamic studies (M.A. or Ph.D.) or similar religious accreditations (A'lim, Mufti, or Shaykh), [and that] there is no one on staff to properly oversee hiring of contractors and/or to administer and supervise policy issues on behalf of one of ODRC's principal faith group." (Complaint, PageID 42, ¶ 18).

(Doc. 14 at 2–3 (quoting Doc. 4 at 3–4)).

Later, Plaintiff amended his complaint, adding in claims under the Eighth Amendment and state contract law. (Doc. 9 at 10 (adopted in Doc. 14)). In past decisions, the Court briefly noted that issues related to res judicata and the statute of limitations may impact this case. (Doc. 4 at 22–28; Doc. 14 at 1–2 n.1; Doc. 18 at 11–12). Now, Defendants move to dismiss on those bases. (Doc. 23). The matter is fully briefed and ripe for review. (Docs. 23, 28, 29).

## II.  STANDARD

To survive a motion under Rule 12(b)(6), a plaintiff must allege "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). At the motion

3

to dismiss stage, the Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in [his] favor[.]" *Wamer v. Univ. of Toledo*, 27 F.4th 461, 466 (6th Cir. 2022) (internal quotation marks and citations omitted). Further, the Court may consider only "matters of public record, orders, items appearing in the record, and attached exhibits." *Denune v. Consol. Capital of N.A., Inc.*, 288 F.Supp.2d 844, 850 (N.D. Ohio 2003). Relevant here, Sixth Circuit case law allows dismissal for failure to state a claim when a case is barred by the doctrine of res judicata or the statute of limitations. *See Keeley v. Eller*, No. 2:18-cv-1355, 2018 WL 5886732, at *3 (S.D. Ohio Nov. 9, 2018) (collecting cases), *report and recommendation adopted*, No. 2:18-cv-1355, 2018 WL 6582785 (S.D. Ohio Dec. 14, 2018); *Rembisz v. Lew*, 590 F. App'x 501, 503–04 (6th Cir. 2014) (discussing that statute of limitations issues "are susceptible to resolution on a motion to dismiss if a plaintiff affirmatively pleads himself out of court").

## III. DISCUSSION

### A. Res Judicata

Defendants say the doctrine of res judicata bars this action because Plaintiff's current claims should have been brought in his 2016 case. (Doc. 23 at 3–6). In support, Defendants point to the similarities between the two actions. For instance, they say in 2016, Plaintiff raised the following issues with Jumu'ah services in Ohio prisons:

> 1) Jumu'ah services are not always being provided; 2) though provided, Jumu'ah services are sometimes late; 3) prison officials fail to supervise Jumu'ah services when the contract provider is late or fails to attend; 4) the contract provider's performance does not always meet the criteria required by normative/mainstream Islamic communities worldwide; and 5) independent contractors are not sufficiently screened or supervised to ensure they are qualified to timely serve mainstream and/or normative adherents of the Islamic faith.

(Doc. 23 at 4 (internal quotations omitted)).

4

In the instant case, Defendants say Plaintiff again "challeng[es] ODRC's policies, contracts with Islamic religious service providers, and the resulting quality of Jumu'ah services afforded prison inmates." (*Id.*). For his part, Plaintiff does not dispute the connectedness of the 2016 lawsuit and this case. (*See generally* Doc. 28). But he says res judicata cannot bar this action because it addresses "new harms being committed on a regular monthly basis." (*Id.* at 4).

"The doctrine of res judicata . . . provides that a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in a prior action." *Pram Nguyen ex rel. U.S. v. City of Cleveland*, 534 F. App'x 445, 451 (6th Cir. 2013) (quoting *In re Alfes*, 709 F.3d 631, 638 (6th Cir. 2013)). Res judicata is an affirmative defense upon which Defendants bear the burden of proof. *Neff v. Flagstar Bank, FSB*, 520 F. App'x 232, 327 (6th Cir. 2013) (noting that Federal Rule of Civil Procedure 8(c) lists res judicata as an affirmative defense). For an action to be barred by the doctrine, four elements must be met:

> (1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their privies; (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action.

*Pram Nguyen ex rel U.S.*, 534 F. App'x at 451.

Here, Defendants' arguments fail at the third element. To begin, res judicata bars only "claims that could have been raised in a prior suit." *Reynolds v. Knox Cnty. Gov't*, No. 3:17-cv-79, 2018 WL 5928117, at *4 (E.D. Tenn. Aug. 31, 2018) (internal quotation omitted). While Defendants argue "the substance of Plaintiff's claims in the instant lawsuit are no different than those previously asserted in *Toller v. Noble*, 2:16-cv-1020 (S.D. Ohio)" (Doc. 29 at 4), Plaintiff says this suit addresses "new harms" that arose after he filed his previous action. (Doc. 28 at 4).

Plaintiff's arguments have merit. In *Lawlor v. National Screen Service Corporation*, the Supreme Court found that even if a subsequent claim involved "essentially the same course of

5

wrongful conduct" as the previous suit, res judicata does not bar claims that did not exist when that action was filed. 349 U.S. 322, 327–28 (1955). In other words, "a plaintiff [is not] barred from asserting 'new claims based on continuous wrongful conduct, even if that conduct is identical to the subject of a prior suit.'" *Kalyango v. Ohio Univ.*, No. 2:22-cv-2028, 2023 WL 2499867, at *10 (S.D. Ohio Mar. 14, 2023) (quoting *Pram Nguyen ex rel. U.S.*, 534 F. App'x at 451). The Sixth Circuit has explained why res judicata does not apply in these circumstances:

> Ordinarily, the 'transaction' that gives rise to a cause of action will be clearly delineated. A car accident victim, for example, must bring all tort claims related to the accident in a single suit or be barred from raising them later. However, when a plaintiff alleges an ongoing course of harmful conduct, as with a nuisance or pattern of harassment, the task of pinpointing the transaction becomes more challenging. On the one hand, a plaintiff should not be permitted to repeatedly challenge the same conduct over and over, but neither should a defendant have perpetual immunity from suit based on a single adjudication that may have ended in settlement or a decision in the plaintiff's favor. A successful plaintiff should not be forever barred from asserting new claims based on continuous wrongful conduct, even if that conduct is identical to the subject of a prior suit.
>
> The solution to this dilemma can be found in the interplay between the doctrines of claim and issue preclusion. If a plaintiff sues a defendant more than once based on an ongoing course of conduct, the doctrine of claim preclusion will typically not prevent the plaintiff from asserting a cause of action that arose after the first suit was decided. Because it did not yet exist, such a cause of action literally could not have been brought in the first suit. However, once a court actually litigates the merits of an issue, the doctrine of issue preclusion will prevent a plaintiff from relitigating the issue in a subsequent suit.

*Pram Nguyen ex rel U.S.*, 534 F. App'x at 451–52.

Further, in determining whether a plaintiff's later allegations are barred by res judicata, "the crucial date is the date the [prior] complaint was filed." *Reynolds*, 2018 WL 5928117, at *4 (quoting *Springs v. U.S. Dep't of Treasury*, 567 F. App'x 438, 445 (6th Cir. 2014)); *see also Putnam Pit, Inc. v. City of Cookeville, Tenn.*, 221 F.3d 834, 840 n.3 (6th Cir. 2000) (rejecting a res judicata defense because the events underlying plaintiff's claims occurred after the filing of a previous, related action). This is because a "plaintiff has no continuing obligation to file

6

amendments to the complaint to stay abreast of subsequent events; [a] plaintiff may simply bring a later suit on those later-arising claims." *Reynolds*, 2018 WL 5928117, at *4 (internal quotation omitted) (emphasis removed).

In the 2016 action, Plaintiff raised claims for alleged retaliation against him, issues with inadequate religious services provided by contractors, lack of access to the courts, and other violations of his right to practice his religion. (*See* Case No. 2:16-cv-1020, Doc. 30). But these claims were because of events that occurred years before this lawsuit was filed. (*See id.*). Here, Plaintiff says that, after he filed his 2016 action, Defendants continued to violate his rights through continued wrongful conduct. (Doc. 28 at 4).

Even so, Defendants argue that Plaintiff should have raised his current claims in his previous case. The Court is not so sure. To start, Plaintiff filed an amended complaint in that case on December 3, 2018, but the Court rejected his later attempts to amend. (Case. No. 2:16-cv-1020, Docs. 30 (amended complaint), 94 (denying a stay requested for the purposes of amending the complaint), 117 (adopting recommendation to deny Plaintiff's motion to amend), 172 at 11 (striking another motion to amend)). Additionally, since that case was filed, Plaintiff moved prisons, interacted with new religious service providers, and perhaps was impacted by different religious services contracts. (*Compare* Case No. 2:16-cv-1020, Doc. 30 at 3 (discussing providers at Madison Correctional Institution, London Correctional Institution, Belmont Correctional Institution, and Ross Correctional Institution) *with* Doc. 8 at 7 (discussing Grafton Correctional Institution, where Plaintiff is now incarcerated)). What's more, one ODRC policy that Plaintiff challenges, 72-REG-01, was modified as recently as May 23, 2022, nearly four years after Plaintiff amended his complaint in the 2016 action. *See* Ohio Dep't of Rehab. & Corr., Policies Procedures, Institutional Religious Servs. (May 2022) 72-REG-01, *available at*

7

https://drc.ohio.gov/about/resource/policies-and-procedures/72-reg-religious-services-programming (last accessed Aug. 22, 2024); *see Dayton Veterans Residences Ltd. P'ship v. Dayton Metro. Hous. Auth.*, 3:16-cv-466, 2022 WL 1913334, at *4 (S.D. Ohio June 3, 2022) ("The Court generally can take judicial notice of records and information located on government websites[.]" (internal quotation and quotation marks omitted)). As such, it is not clear from the pleadings alone that the factual basis for Plaintiff's claims existed in 2018 when he amended the complaint in his prior action. And importantly, although the doctrine of res judicata is an affirmative defense, Defendants did not respond to Plaintiff's arguments concerning new harms. (*See* Doc. 29 at 3–4). Therefore, the Court finds Defendants do not meet their burden, and res judicata does not bar all of Plaintiff's claims.

Still, Plaintiff, at times, contradicts himself. In his briefing, he represents his claims are based in events that occurred after he filed his previous action, but other times, he points to events that occurred as long ago as 2012. (Doc. 28 at 3 (stating the "harms plaintiff addresses now occurred at PCI in 2016–2019 and GCI from 2019–2024); Doc. 8 at 2 (attempting to raise claims on behalf of all Sunni-Muslims incarcerated in Ohio since 2012)). To be clear, any claims that Plaintiff had prior to the filing of the amended complaint in his previous suit should have been brought in that action. Plaintiff can, however, pursue claims that arose after that date. *Ball by Burba v. Kasich*, 244 F.Supp.3d 662, 677 (S.D. Ohio 2017) (finding res judicata did not bar plaintiff's claims because they were based in facts arising after a previous consent decree and the "surrounding regulatory scheme" had changed); *Reynolds*, 2018 WL 5928117, at *5 ("Claims arising from factual events occurring after the filing of a complaint are not barred by *res judicata*."); *Springs*, 567 F. App'x at 445 (finding a claim was not barred by res judicata "because the factual predicate for that claim did not exist" during the earlier suit).

In their Motion, Defendants seek to dismiss the entire case. (Doc. 23 at 1). While some of Plaintiff's claims may be barred, Defendants did not identify exactly which ones are. *See, e.g.*, *Butler v. FCA US, LLC*, 119 F.Supp.3d 699, 707 (E.D. Mich. 2015) (finding, on a motion to dismiss, that a res judicata defense could not "be established based on the allegations and evidence" available to the court). In the end, it is their burden to do so. *Id.* Consequently, the Undersigned **RECOMMENDS** that Defendants' motion to dismiss on the basis of res judicata be **DENIED**.

B.     **Statute of Limitations**

Next, Defendants argue this action is barred by the statute of limitations. (Doc. 23 at 6–8). Notably, Defendants raise statute of limitations arguments only for Plaintiff's claims under 42 U.S.C. § 1983 and RLUIPA. (Doc. 23 at 6–8). As a result, the Court does not address whether Plaintiff's other claims are untimely. (*See* Doc. 14 at 4, 14 (allowing state law claims to proceed against Defendants)).

To begin, like the doctrine of res judicata, the statute of limitations is an affirmative defense upon which Defendants bear the burden of proof. *Surles v. Andison*, 678 F.3d 452, 458 (6th Cir. 2012). At the motion-to-dismiss stage, Defendants may succeed on a statute of limitations defense only where it is "valid from the face of the Complaint alone" that Plaintiff's suit is time barred. *Williams v. Dayton Police Dep't*, 680 F. Supp. 1075, 1077 (S.D. Ohio 1987); *see also Dollison v. Antero Res. Corp.*, No. 2:21-cv-1619, 2022 WL 16835991, at *3 (S.D. Ohio May 4, 2022) ("[U]nless the face of the Complaint affirmatively shows that the claim is time-barred, it is generally inappropriate to dismiss a claim based on the statute of limitations." (internal quotation and quotation marks omitted)).

The statute of limitations for Plaintiff's Section 1983 claims is two years, while the statute of limitations for his claims under RLUIPA is four years. *Cooey v. Strickland*, 479 F.3d 412, 416

9

(6th Cir. 2007); *Richardson v. Mohr*, No. 2:20- cv-4141, 2020 WL 4784666, at *2 (S.D. Ohio Aug. 18, 2020), *report and recommendation adopted*, 2020 WL 5230765 (S.D. Ohio Sept. 2, 2020). Ordinarily, the statute of limitations "commences to run when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Williams*, 680 F. Supp. at 1078 (quoting *Sevier v. Turner*, 742 F.2d 262, 272–73 (6th Cir. 1984) (emphasis in original removed)). But this case is more complicated. Here, Plaintiff alleges "ongoing harms" resulting from Defendants' policies and actions. (*See generally* Doc. 8; Doc. 28 at 4 ("[Plaintiff's action] cannot be time barred given the most recent exhaustion to ongoing harms.")). As this Court has previously acknowledged, these allegations implicate the continuing violations doctrine. (*See* Doc. 4 at 26–27).

That doctrine provides that an action is not time barred where "(1) the defendants engage in continuing wrongful conduct; (2) injury to the plaintiff[] accrues continuously; and (3) had the defendants at any time ceased their wrongful conduct, further injury would have been avoided." *Broom v. Strickland*, 579 F.3d 553, 555 (6th Cir. 2009) (internal quotation omitted). "A continuing violation is occasioned by continual unlawful acts, not continual ill effects from an original violation." *Eidson v. State of Tenn. Dep't of Child. Servs.*, 510 F.3d 631, 635 (6th Cir. 2007) (internal quotation omitted). To that end, "[p]assive inaction does not support a continuing violation theory." *Id.* (citing *Tolbert v. State of Ohio Dep't of Transp.*, 172 F.3d 934, 940 (6th Cir. 2007); *Paschal v. Flagstar Bank*, 295 F.3d 565, 573 (6th Cir. 2002)).

On the surface, it appears that the doctrine may apply to Plaintiff's case. First, Plaintiff alleges that ODRC's policies are wrongful and that Defendants' ongoing actions under those policies violates his rights. (Doc. 8 at 8 (alleging that ODRC's policies and practices violate the First, Eighth, and Fourteenth Amendments, along with RLUIPA), 8–21 (describing Defendants' allegedly wrongful conduct)). Second, he argues his injuries accrue monthly from Defendants'

implementation of their religious services policies. (Doc. 28 at 3 "[A]t every prison and in every month since at least 2012; continuing up until our current month and prison new harms are created against [Plaintiff.]")). Third, he alleges that if the challenged conduct ceased, further harms would be avoided. (Doc. 28 at 2 (arguing that this action seeks to remedy constitutional issues related to ODRC's religious services); Doc. 8 at 22–24 (seeking declaratory judgments and permanent injunctions for ODRC's policies and Defendants' actions)). Finally, he alleges that at least some of the events underlying his claims occurred within the applicable statute of limitations. (*See, e.g.*, Doc. 8 at 2 (attempting to raise claims on behalf of all Sunni Muslims incarcerated in Ohio for alleged harms from "2012 to present"), 7 (noting that Plaintiff filed grievances for events as recently as March and May 2023)); *Pittman v. Spectrum Health Sys.*, 612 F. App'x 810, 813 (6th Cir. 2015) ("[P]arties who seek to invoke the continuing violations doctrine also must allege they have suffered a specific discriminatory act within the applicable limitations period.").

For their part, Defendants say very little on the doctrine's applicability to Plaintiff's case. They briefly quote a non-binding Western District of Tennessee case for the notion that "a continuing violation claim fails when 'the plaintiff knew, or through the exercise of reasonable diligence would have known, [he] was being discriminated against at the time the earlier events occurred.'" (Doc. 23 at 8 (citing *Yetto v. City of Jackson*, No. 1:17-cv-1205, 2019 WL 454603, at *7 (W.D. Tenn. Feb. 5, 2019))). They say Plaintiff was aware of his injuries when he filed his 2016 action, so his claims should be dismissed as untimely. (*Id.*). But Defendants' briefing says no more on this case's applicability to Plaintiff's action, and the Undersigned find it distinguishable from the circumstances presented here.

To start, in *Yetto*, the court identified two, discrete events that were the source of the plaintiffs' harms. *See* 2019 WL 454603, at *8–9 (finding that either a letter from the city planning

11

department or a report outlining the requirements for a zoning exception were identifiable, discrete events). As a result, the court concluded that those events started running the statute of limitations and that the action was untimely. *See id.* Here, Defendants have not pointed to any such events. *Hollis v. Erdos*, 480 F.Supp.3d 823, 829–30 (S.D. Ohio 2020) (noting that Defendants bear the burden of proof on a statute of limitations defense); *cf. Yetto*, 2019 WL 454603, at *9 (analyzing whether the continuing violations doctrine tolled the statute of limitations "beyond one year from those dates cited by Defendants"). Nor have they addressed the fact that some of the conduct about which Plaintiff complains occurred within the applicable limitations period. Consequently, the Undersigned cannot say all Plaintiff's injuries are ill effects from time-barred events. *Cf. Yetto*, 2019 WL 454603, at *7–9; *Kovacic v. Cuyahoga Cnty. Dep't of Child. & Family Servs.*, 606 F.3d 301, 308 (6th Cir. 2010) (finding that plaintiff's injuries were "continued ill effects" stemming from the "initial removal of her children from her custody"); *McCune v. City of Grand Rapids*, 842 F.2d 903, 906 (6th Cir. 1988) (finding a "claim of wrongful continued incarceration" was an effect of a false arrest and not a continuing violation that tolled the statute of limitations); *Tackett v. Marion Cnty. Fair Bd.*, 272 F.Supp.2d 686, 691 (N.D. Ohio 2003) ("In this case, plaintiff's citation for trespass was an ill effect of his 1994 ban, not a continuing violation.").

Instead, Sixth Circuit precedent suggests that at least some of Plaintiff's claims are still timely. In *Kuhnle Brothers, Inc. v. County of Geauga*, the Sixth Circuit applied the continuing violation doctrine to a Section 1983 claim. 103 F.3d 516, 522–23 (6th Cir. 1997). There, a trucking company challenged the constitutionality of a county resolution that banned through truck travel on certain county roads. *Id.* Ultimately, the Court held that the resolution caused "a new deprivation of constitutional rights every day [it] remained in effect," and "[s]ince the last alleged deprivation occurred" within the limitations period, the trucking company's claim was not entirely

12

time barred. *Id.* at 522. The same could be said for Plaintiff's case. Plaintiff challenges the lawfulness of ODRC's policies and alleges monthly harm. (Doc. 8 at 2–3, 7, 8–23; Doc. 28 at 3). So, at least some of the challenged conduct occurred within the relevant limitation periods. At this time, the Court cannot say that all of Plaintiff's claims are untimely simply because he complained of similar conduct in past litigation.

As a last resort, Defendants argue that because Plaintiff did not challenge ODRC's policies within two and four years after they were enacted, his claims are time barred. (Doc. 23 at 7). Again, not so. A law "that works an ongoing violation of constitutional rights does not become immunized from legal challenge for all time merely because no one challenges it within two [or four] years of its enactment." *Kuhnle Bros., Inc.*, 103 F.3d at 522. Likewise, ODRC's policies and Defendants' actions under those policies are not unchallengeable simply because no prisoner filed suit within a few years of their enactment. Although the Court has acknowledged this precedent in earlier orders, Defendants say no more on this front. (*See* Doc. 4 (citing *Kuhnle Bros., Inc.*, 103 F.3d at 522, and noting that the "continued enforcement of an unconstitutional statute cannot be insulated by the statute of limitations"); Docs. 23, 29 (Defendant's briefing on their motion to dismiss)).

At bottom, Defendants have failed to meet their burden of showing Plaintiff's entire case is time barred. But going forward, the statute of limitations will likely have some impact on this case. As the Sixth Circuit has explained, "[t]o allow damages for the entire period during which a law is in effect when a plaintiff challenges the law long after it was enacted" would frustrate the purpose of the statute of limitations. *Kuhnle Bros., Inc.*, 103 F.3d at 522. Instead, a new limitations period begins to run "each day as to that day's damage." *Id.* So, in the end, Plaintiff may only be able to recover for events that occurred within the statute of limitations. *Id.* at 522–23.

At this stage in the case, Defendants cannot show what time period matters. Since Plaintiff is a prisoner proceeding *pro se*, the Prison Litigation Reform Act (PLRA) applies to this case. In such cases, a prisoner must exhaust their available administrative remedies before filing suit in federal court. *Lee v. Willey*, 789 F.3d 673, 677 (6th Cir. 2015). As a result, "the statute of limitations applicable to a prisoner's civil rights claim is tolled while [he] exhausts the required administrative remedies." *Hollis*, 480 F.Supp.3d at 830 (citing *Brown v. Morgan*, 209 F.3d 595, 596 (6th Cir. 2000)). Here, there is not enough evidence in the record for the Court to determine how much time should be tolled for Plaintiff's exhaustion efforts. For that reason, this issue cannot be properly resolved until later in litigation when that evidence becomes available. *See id.* at 831 (noting that statute of limitations and exhaustion defenses require affidavits and other documentary evidence).

In sum, the Undersigned cannot say, based on the pleadings alone, that all of Plaintiff's claims are untimely. The Undersigned **RECOMMENDS** that Defendants' Motion be **DENIED**.

### IV. CONCLUSION

For the foregoing reasons, the Undersigned **RECOMMENDS** that Defendants' First Motion to Dismiss (Doc. 23) be **DENIED**.

### Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a *de novo* determination of those portions of the Report or specific proposed findings or recommendations to which objection is made. Upon proper objection, a District Judge of this Court may accept, reject, or

modify, in whole or in part, the findings or recommendations made herein, may receive further evidence, or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation *de novo* and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Date: August 27, 2024                    /s/ Kimberly A. Jolson
                                         KIMBERLY A. JOLSON
                                         UNITED STATES MAGISTRATE JUDGE