**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Kevin A. Tolliver, | : | |
| | : | **Case No. 2:22-CV-4567** |
| **Plaintiff,** | : | **Consolidated 2:16-CV-1020** |
| | : | |
| v. | : | **Judge Sargus** |
| | : | |
| Ohio Department of | : | **Magistrate Judge Jolson** |
| Rehabilitation and Correction, | : | |
| et al., | : | |
| | : | |
| **Defendants.** | : | |

## CONSOLIDATED DEFENDANTS' FIRST MOTION FOR SUMMARY JUDGMENT REGARDING PLAINTIFF'S RLUIPA AND THIRD-PARTY CONTRACT CLAIMS

Pursuant to Federal Rule of Civil Procedure 56, Defendants ("Defendants"), by and through counsel, respectfully move the Court to grant them summary judgment in the instant case filed by Kevin A. Tolliver ("Plaintiff"). The grounds for Defendants' motion are more fully described in the supporting memorandum set forth below.

Respectfully submitted,

DAVE YOST
Ohio Attorney General

 s/ Mindy Worly
MINDY WORLY (0037395)
Principal Assistant Attorney General
Criminal Justice Section
Corrections Litigation Unit
30 East Broad Street, 23rd Floor
Columbus, Ohio 43215
Phone: (614) 728-0161/Fax: (866) 474-4985
Mindy.Worly@OhioAGO.gov

*Trial Counsel for Defendants*

## MEMORANDUM IN SUPPORT

### I. Introduction

The claims in both the present case, Case No. 2:22-CV-4567 ("*Tolliver* II") and the case which was consolidated with it on August 13, 2025 (ECF No. 54), Case No. 2:16-cv-01020, ("*Tolliver* I"), are remarkably similar. Both essentially contend that Plaintiff has been harmed by the effects of ODRC's religious services policy, allegedly resulting in a contracting scheme which not only awards Islamic services providers more contracts than they can service but also fails to provide Muslim inmates the rites and rituals required of all Jumah services, thereby purportedly violating RLUIPA and amounting to the breach of a third-party contract. *See Tolliver* I, Plaintiff's Objection,  ECF No. 63, PageID 827.

On September 25, 2025, the Magistrate Judge recommended that Defendants Davis and Chambers-Smith, the only Defendants left standing in *Tolliver* II, be granted summary judgment because all the claims Plaintiff asserted therein were unexhausted and/or barred by res judicata. ECF No. 56, PageID 769. While the named Defendants in *Tolliver* I (Defendants Noble, Jeffries, Cahill, Taylor, Moore, Lawrence, Davis, and Hunyadi) may be different, the RLUIPA and third-party contract claims Plaintiff alleges therein are the same as those he alleged in *Tolliver* II. Accordingly, though consolidate herein, since the remaining *Tolliver* I claims also fail to state a claim for relief, Defendants are entitled to summary judgment on these claims as well.

### II.    The Legal Standard for Summary Judgment.

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case.

moving party meets its burden of production, the nonmoving party must present significant probative evidence in support of its claim(s). *Id.* However, the mere existence of a scintilla of evidence to support a plaintiff's position will be insufficient; instead there must be evidence on which the jury could reasonably find for the plaintiff. *Copeland*, 57 F.3d at 478-79. Where, looking to the record as a whole, a reasonable mind could come to only one conclusion, there is no genuine issue of material fact and summary judgment is appropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-51, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986).

Thus, the necessary inquiry for the Court is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Patton v. Bearden*, 8 F.3d 343, 346 (6th Cir. 1993) (quoting *Anderson*, 477 U.S. at 251-52). It is proper to enter summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Where, as here, the nonmoving party has "failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof," the moving party is entitled to judgment as a matter of law. *Id.* (quoting *Anderson*, 477 U.S. at 250).

## III. RLUIPA

RLUIPA bars states from imposing a "substantial burden on the religious exercise of a person residing in or confined to an institution" unless it is the "least restrictive means" of furthering a "compelling governmental interest." 42 U.S.C. § 2000cc-1(a). But to obtain relief, an inmate must first show that he has a "sincerely held religious belief" and that the government "substantially burdened [his] exercise of religion." *Holt v. Hobbs*, 574 U.S. 352, 361 (2015). Not only is the substantial burden hurdle high, it is also a difficult threshold to cross. *Living Water*

3

*Church of God v. Charter Twp. of Meridian*, 258 F. App'x 729, 734, 736 (6th Cir. 2007). Thus, "a 'substantial burden' must place more than an inconvenience on religious exercise." *Id.* at 739 (quoting *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1227 (11th Cir. 2004)). Only then may the prisoner require the State to satisfy the daunting compelling interest and least restrictive-means tests otherwise imposed. *Cavin v. Mich. Dep't of Corr.,* 927 F.3d 455, 458 (6th Cir. 2019).

However, RLUIPA does not create a cause of action against individuals in their personal capacity. *Carnahan v. Adamson,* Case No. 1:24-cv-809, 2025 U.S. LEXIS 45572, at *13 *W.D. Mich. 2025) (citing *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 331 (5th Cir. 2009), *aff'd, Sossamon v. Texas*, 563 U.S. 277, 131 S. Ct. 1651, 179 L. Ed. 2d 700 (2011). Therefore, to the extent Plaintiff is attempting to bring his RLUIPA claim against Defendants in their individual capacity in the case at bar, it fails as a matter of law. *Id.*

Nonetheless, it appears that Plaintiff is also bringing his RLUIPA claim against Defendants in their respective official capacities. *Tolliver* I, Amended Complaint, ECF No. 30, PageID 199. A plaintiff can sue state officers to enjoin an unconstitutional state policy. But for the plaintiff to prevail, the officer being sued must "have some connection" with the policy's enforcement or execution. *See Ex Parte Young*, 209 U.S. 123, 159-60 (1908). Only if the named defendants are "actively involved" with the challenged conduct can they be sued for injunctive relief without implicating the Eleventh Amendment. *Doe v. DeWine*, 910 F.3d 842, 848-49 (6th Cir. 2018).

Even so, the states and their departments are immune from suit in the federal courts unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. It is therefore significant that in *Sossamon*, the Supreme Court held that RLUIPA did not abrogate sovereign immunity under the Eleventh Amendment. 563 U.S.

at 277; *see also Cardinal v. Metrish*, 564 F.3d 794, 801 (6th Cir. 2009) ("[T]he Eleventh Amendment bars plaintiff's claim for monetary relief under RLUIPA."). Thus, although the statute permits the recovery of "appropriate relief against a government," 42 U.S.C. § 2000cc-2(a), monetary damages are not available under RLUIPA.[1]

Furthermore, while an official capacity action seeking injunctive or declaratory relief constitutes an exception to sovereign immunity, *Ex Parte Young*, 209 U.S. at 159-60, the exception can only be used to avoid a state's sovereign immunity when a 'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (quoting *Verizon Md. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)). Therefore, due to Plaintiff's transfer to the Grafton Correctional Institution ("GCI"), the actions of Defendants Noble (Warden), Major Taylor (DWO), Moore (DWSS), Chaplain Davis, Chaplain Cayhill, Inspector Christler, and Inspector Sibalski, *Tolliver* I, Amended Complaint, ECF No. 30, PageID 199, can no longer impact Plaintiff. Nor did Plaintiff bother to amend his Complaint to allege that the RLUIPA violations he previously alleged continued after his prison transfer. *El Bey v. Kehr*, No. 23-3505, 2024 U.S. App. LEXIS 1974, at *6 (6th Cir. 2024) (citing *Colvin v. Caruso*, 605 F.3d 282, 289 (6th Cir. 2010)). For this reason, any claim Plaintiff may have had against Defendants for prospective injunctive relief when he filed *Tolliver* I on October 25, 2016 (ECF No. 1) has since been rendered moot. *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) (holding that a prisoner-plaintiff's claims for injunctive and

---

[1] Simply stated, Plaintiff is precluded from obtaining money damages for the RLUIPA violations he alleges. "RLUIPA does not authorize damages against officials sued in their official capacity, *Sossamon v. Texas*, 563 U.S. 277, 293, 131 S. Ct. 1651, 179 L. Ed. 2d 700 (2011), or their individual capacity, *Haight v. Thompson*, 763 F.3d 554, 568 (6th Cir. 2014)." *Williams v. Bush*, Case No. 25-10980, 2025 U.S. Dist. LEXIS 193358, at *6 (E.D. Mich. 2025). Accordingly, any request for monetary relief against the Defendants in either their official or their individual capacity should be summarily dismissed.

declaratory relief became moot when he was transferred from the prison about which he complained).

Certainly, Plaintiff's transfer to GCI is fatal to his RLUIPA claim. *Id.* Even so, Plaintiff's RLUIPA claim also fails for another reason. Although Plaintiff's RLUIPA claim concerns ODRC policy, he does not challenge the validity of the policy itself. Rather, Plaintiff alleges that ODRC's policy violates RLUIPA because it "creates conditions favorable to abuse by contractors, administrators, and staff" "which is an ongoing harm to Plaintiff, and all similarly situated mainstream normative adherents to the Islamic faith in Ohio prisons." *Tolliver* I, Amended Complaint, ECF No. 30, PageID 208. Nonetheless, while a plaintiff may sue ODRC under RLUIPA for declaratory and injunctive relief, *Sossamon*, 560 F.3d at 326-27, *aff'd*, 563 U.S. at 277; *Haight v. Thompson*, 763 F.3d 554, 568 (6th Cir. 2014), Plaintiff cannot do so here. On the contrary, since ODRC is not named as a Defendant in either the title or the caption of *Tolliver* I, the Department is not subject to suit in the instant matter. *Jackson v. Webb*, Civil Action No. 5:24CV-P133-CRS, 2025 U.S. Dist. LEXIS 74232, at *7 (W.D. Ky. 2025).

Neither are there any facts in *Tolliver* I suggesting that any Defendants abused any prison policy, much less that they are currently doing so or that they were actively involved in enforcing or executing any ODRC policy that substantially burdened Plaintiff's religious practice or coerced him into doing anything that would run afoul of his sincerely held religious beliefs. *Doe v. DeWine*, 910 F.3d at 848-49. Rather, it was the W. D. Muhammed contractors ("WDM contractors") at the Pickaway Correctional Institution, the London Correctional Institution, the Madison Correctional Institution, the Belmont Correctional Institution, and/or the Ross Correctional Institution who purportedly abused ODRC's religious services policies and were allegedly responsible for the so-called religious persecution Plaintiff claims. *Tolliver* I, Amended Complaint, ECF No. 30, PageID

6

198, 203-204. Indeed, no personal, active, and/or intentional involvement in any wrongdoing whether ongoing or otherwise is alleged against any *Tolliver* I Defendant. *Yaacov v. Mohr,* No. 22-3294, 2022 U.S. App. LEXIS 27060, *4 (6th Cir. 2022) (to establish a defendant's liability under RLUIPA, a plaintiff must establish personal involvement) (citing *Heyerman v. County of Calhoun*, 680 F.3d 642, 647 (6th Cir. 2012); *Mitchell v. Schroeder,* Case No. 2:21-cv-109, 2022 U.S. Dist. LEXIS 16172, at *17 (W.D. Mich. 2022) (to the extent plaintiff failed to allege that the defendants participated in active RLUIPA-violating behavior with regard to his "substantial burden" claims, he failed to state a claim for violation of his RLUIPA rights against them).

For much the same reason, negligent action does not violate RLUIPA. *Gardner v. Pants,* Case No. 1:25-cv-529, 2025 U.S. Dist. LEXIS 159381, at *20 (W.D. Mich. 2025) (citing *Colvin v. Horton*, No. 2:19-cv-122, 2019 WL 3927425, at *6 (W.D. Mich. 2019) (concluding that "in the absence of a state-of-mind standard under the statute itself, liability under the RLUIPA is limited to intentional conduct"); *Garrison v. Dutcher*, No. 1:07-cv-642, 2008 WL 4534098, at *6 (W.D. Mich. 2008) (concluding that RLUIPA requires a state of mind higher than negligence); *Nelson v. Jackson*, No. 2:12-cv-1167, 2014 WL 197877, at *13 (S.D. Ohio 2014) (same). Yet the record in *Tolliver* I includes no facts suggesting that any Defendant intentionally interfered with Plaintiff's RLUIPA rights. Instead, it is the WDM contractors who Plaintiff claims abused the prison's policies and are responsible for the RLUIPA violations he alleges. ECF No. 30, PageID 198, 203-204.

It is therefore not surprising that the terms "sincerely held religious belief" and "substantial burden" are nowhere to be found in any of Plaintiff's *Tolliver* I filings. Instead, the closest Plaintiff ever comes to implying any impingement on *his* religious practices in *Tolliver* I is when he alleges that lamb meat is budgeted for Eid al-Adha but not served at WDM contractor facilities, that

Ramadan prayer has been delayed past its required time due to the opinions of the WDM contractors, and that inmates are forced to choose between eating the Iftar evening meal and praying the Magrib evening prayer as the result of the WDM contractors' say so. ECF No. 30, PageID 207. But none of this has anything to do with the enforcement or execution of ODRC policy at GCI, much less the personal, active, and/or intentional involvement in wrongdoing of any of the Defendants named in this action.

On the contrary, *Tolliver* I never even bothers to explain how ODRC's policy or the Defendants' alleged abuse thereof compelled Plaintiff to violate his sincerely held religious beliefs or effectively barred him from exercising his religion. *Ackerman v. Washington*, 16 F.4th 170, 184 (6th Cir. 2021) (stating that a prison imposes a substantial burden on religion "when it prevents participation in sincerely motivated conduct by barring access to a practice so there is no choice at all") (cleaned up)); *Cutter v. Wilkinson,* 544 U.S. 709, 720 n.8 (2005) ("RLUIPA does not require a State to pay for an inmate's devotional accessories."). But no such bar exists here. On the contrary, Plaintiff never claims that Defendants prohibited him access to anything.

Critically, there are no facts suggesting that ODRC policy or any of the individuals named as Defendants in *Tolliver* I abused or are continuing to abuse ODRC policy, much less were personally, actively and/or intentionally involved in precluding *Plaintiff* from obtaining lamb meat for Eid al-Adha,[2] from reciting Ramadan prayers at the proper time, or from eating the Iftar meal and praying the Magrib evening prayer. *Tolliver* I, Amended Complaint, ECF No. 30, PageID 207-

---

[2] *See Heard v. Dirschell,* Case No. 1:24-cv-5, 2025 U.S. Dist. LEXIS 186519, at *8 (W.D. Mich. 2025) ('RLUIPA's protection of religious rights does not obligate prisons to provide inmates with ritually significant foods. That Muslims are not given dates with which to break the fast or bean pies instead of other desserts imposes no *burden* on Muslims' observance of Ramadan; there is no suggestion that Lakeland prisoners have ever been prohibited from obtaining dates or bean pies through other avenues or from consuming them at appropriate times. *Cf. Ackerman*, 16 F.4th at 185 (describing intersecting regulations impeding Jewish prisoners' ability to eat meat and dairy as part of their holiday meals). Accordingly, the Court finds that no substantial burden has been placed on Heard's acting in accordance with the dictates of his faith.")).

08. Rather, Plaintiff merely alleges that it was the non-defendant WDM contractors who abused the contract by refusing to include the rites and rituals Plaintiff prefers in the Jumah services and Ramadan observances they conducted, *id.*, PageID 204; that normal mainstream Muslims would never consider an NOI service valid, *id.*, PageID 207; that normative Sunnis would not attend a WDM service unless it was for some invited purpose, *id.*; that by employing WDM contractors Defendants kept the number of Muslims using chapel services down to conserve resources for Christian services, *id.*; and that Muslim inmates are being denied basic religious rights. *Id.* But nowhere does *Tolliver* I suggest that *Plaintiff's* exercise of religion was and continues to be substantially burdened by Defendants' abuse of ODRC's policy, much less by any action they personally, actively, and/or intentionally took to interfere with Plaintiff's RLUIPA rights. Plaintiff's conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim for relief. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

In sum, not only because Plaintiff's RLUIPA claim is moot, but also because there is no evidence that Plaintiff has a sincerely held religious belief, that his exercise of religion was substantially burdened by Defendants' abuse of ODRC's policy, and that at least one of the Defendants was personally, actively, and/or intentionally involved in enforcing or executing a policy that coerced Plaintiff into engaging in conduct that was contrary to his sincerely held religious beliefs or that effectively barred him from practicing his religion, there is no need for the Court to move on to RLUIPA's "daunting compelling-interest and least-restrictive-means tests." *Cavin v. Mich. Dep't of Corr.,* at 458. Instead, Defendants should be awarded summary judgment on Plaintiff's RLUIPA claim.

## IV. Breach of Contract

State contract law determines whether a non-signatory such as Plaintiff has any rights under a contract. *ORG Holdings Ltd. V. BMW Fin. Servs.,* NA, LLC, No. 24-3929, 2025 U.S. App. LEXIS 21615, at *8 (6th Cir. 2025). However, Ohio's Supreme Court has determined that only intended third-party beneficiaries may assert rights to contracts to which they are not a party. *TRINOVA Corp. v. Pilkington Bros., P.L.C.,* 70 Ohio St. 3d 271, 638 N.E.2d 572, 577 (Ohio 1994). Unsurprisingly, the Sixth Circuit is in accord with this view. *Norfolk & W. Co. v. United States,* 641 F.2d 1201, 1208 (6th Cir. 1980) (A third-party beneficiary has enforceable rights under a contract only if he is an "intended beneficiary" as opposed to an "incidental beneficiary."); *Sagraves v. Lab One, Inc.*, 316 F. App'x 366, 371 (6th Cir. 2008) (same).

Notably, in *Hill v. Sonitrol of SW Ohio, Inc.*, 36 Ohio St. 3d 36, 521 N.E.2d 780, 784 (Ohio 1988), the Ohio Supreme Court clarified the distinction between intended third-party beneficiaries and incidental third-party beneficiaries, adopting the Restatement (Second) of Contracts, § 302 which provides:

(1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either

(a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or

(b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.

(2) An incidental beneficiary is a beneficiary who is not an intended beneficiary.

*Sonitrol* also quoted with approval comment e to Section 302 which states in part:

Performance of a contract may benefit a third person. But unless the third person is an intended beneficiary, no duty to him is created. *Hill v. Sonitrol of SW Ohio, Inc.,* 521 N.E.2d at 784 (clarifying that some third-party beneficiaries are merely incidental). In other words, "the mere conferring of some benefit on the supposed beneficiary by the performance of a particular promise in a contract [is] insufficient; rather, the performance of that promise must also satisfy a duty owed by the promisee to the beneficiary." *Cook v. Ohio Nat'l Life Ins. Co.*, 961 F.3d 850, 856 (6th Cir. 2020) (quoting *Norfolk,* 641 F.2d at 1208).

By contrast with the Sixth Circuit's holding, the record in the present case is bereft of any indication that Plaintiff was considered an intended beneficiary in any contract between ODRC and the Islamic services contractors named in *Tolliver* I, whether Abdul Rahman Shahid or Sunni Ali Islam. *Tolliver* I, Amended Complaint, ECF No. 30, PageID 201. Therefore, even if Abdul Rahman Shahid and Sunni Ali Islam believed that certain rites and rituals were not required to be included in the Jumah services and Ramadan observances they conducted or were incapable of performing them to Plaintiff's satisfaction, because there is no evidence that Plaintiff was an intended beneficiary of the contracts at issue, Defendants are entitled to summary judgment on Plaintiff's third-party contract claim. *Id.*

## V. Exhaustion.

The Prison Litigation Reform Act ("PLRA") contains a mandatory exhaustion requirement. 42 U.S.C. § 1997e(a). For this reason, an inmate challenging his conditions of confinement must first exhaust his administrative remedies. 42 U.S.C. § 1997e(a). This statutory command is mandatory. *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016) ("An inmate 'shall' bring 'no action'..., absent exhaustion of available administrative remedies"); *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999) ("A court may not excuse a failure to exhaust ") (quoting *Ross*, 136 S. Ct.

11

at 1856). Accordingly, to exhaust a claim, an inmate must proceed through all the steps of the grievance process *before* filing a complaint. *Id.*

Therefore, an inmate cannot "'simply fail to file a grievance or abandon the process before completion and claim that he has exhausted his remedies or that it is futile for him to do so . . . .'" *Ware v. Azakoba*, 1:21-CV-00002-GNS-HBB, 2022 U.S. Dist. LEXIS 247836, at *4 (W.D. Ky. July 1, 2022) (quoting *Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 2022). Neither will ignorance of the PLRA's exhaustion requirement or unfamiliarity with the prison's grievance system excuse noncompliance. For instance, in *Thomas v. McDowell*, No. 2:10-cv-152, 2013 U.S. Dist. LEXIS 130517 (S.D. Ohio 2013), the inmate argued he should be excused from his failure to exhaust because "the institution never informed him how to participate in the informal complaint, grievance and appeal process, and that he was unaware that the failure to properly exhaust his administrative remedies would result in the dismissal of his federal claims under the PLRA." *Id.* at *10. Not surprisingly, the court flatly rejected the inmate's argument. *Id.* at *11 (citing *Napier v. Laurel County*, 636 F.3d 218, 221-222 n. 2 (6th Cir. 2011)).

Just as important, exhaustion is "defined not by the PLRA, but by the prison grievance process itself," *Jones v. Bock*, 549 U.S. 199, 211 (2007), a process which, in Ohio, consists of three-steps. Ohio Admin. Code 5120-9-31(K). First, the inmate must file an informal complaint ("ICR") within fourteen days after the event occurs to the direct supervisor or relevant department specifically describing the event giving rise to the complaint. *Id.* at 5120-9-31(K)(1). Critically, the ICR "must contain specific information; dates, times, places, the event giving rise to the complaint and, if applicable the name or names or personnel involved and the name or names of any witnesses." Ohio Admin. Code 5120-9-31(K) (effective from May 1, 2008, to April 4, 2019). If the prisoner does not know the identity of those involved, he may file a "John/Jane Doe"

complaint. *Id.* "[D]ates, times, places, physical descriptions of any unidentified personnel and the actions of said personnel giving rise to the complaint," however, are still required. *Id.*

The second step is for the inmate to file a notification of grievance ("NOG") with the inspector of institutional services within fourteen days of receiving the ICR response. *Id.* at 5120-9-31(K)(2). The third step before an inmate has exhausted his administrative remedies is to file an appeal to the office of the chief inspector within fourteen days after receiving a response to the NOG. *Id.* at 5120-9-31(K)(3). Only after receiving the chief inspector's final decision is the inmate's grievance properly exhausted. *Id.*

Certainly, the PLRA's exhaustion requirement applies both to RLUIPA and the third-party contract claim Plaintiff asserted in *Tolliver* I, the only claims that were remanded for adjudication in this consolidated case. And while "[e]xhaustion may not be completed after a federal complaint has been filed," *Freeman v. Francis*, 196 F.3d at 645, of the fourteen grievances Plaintiff filed during the relevant time period pertaining in at least some way to the provision of religious services, none of them were exhausted against the Defendants prior to *Tolliver* I being filed.

For instance, while Plaintiff exhausted a grievance alleging that an Islamic services contractor at the Madison Correctional Institution ("MaCI") harassed him and ridiculed his religious beliefs, nowhere did it suggest that any Defendant abused any prison policy or was personally, actively, and/or intentionally involved in enforcing or executing any ODRC policy that substantially burdened Plaintiff's religious practice or coerced him into doing anything that would run afoul of *his* sincerely held religious beliefs. *Doe v. DeWine*, 910 F.3d at 848-49. Nor did this grievance claim that Plaintiff had any rights pursuant to a third-party contract. Thus, this grievance cannot exhaust any claim asserted against the Defendants in the present action. *See* Plaintiff's grievances, attached Exhibit A.

Plaintiff also exhausted a grievance which alleged that an Islamic services contractor at MaCI failed to order books and/or educational materials to educate, maintain and otherwise support unidentified Muslim inmates, but nowhere did it suggest that any Defendant abused any prison policy or was personally involved in enforcing or executing any ODRC policy that substantially burdened *Plaintiff's* religious practice or coerced *him* into doing anything that would run afoul of *his* sincerely held religious beliefs. *Doe v. DeWine*, 910 F.3d at 848-49. Nor did this grievance claim that Plaintiff had any rights pursuant to a third-party contract. Thus, this grievance cannot exhaust any claim asserted against the Defendants in the present action. *See* Plaintiff's grievances, attached Exhibit A.

Moreover, Plaintiff exhausted a grievance which claimed that MaCI's Islamic services contractor is unable or unwilling to perform a proper Jummah service and should therefore be fired. However, nowhere did this grievance suggest that any Defendant abused any prison policy or was personally involved in enforcing or executing any ODRC policy that substantially burdened *Plaintiff's* religious practice or coerced *him* into doing anything that would run afoul of his sincerely held religious beliefs. *Doe v. DeWine*, 910 F.3d at 848-49. Nor did the grievance claim that Plaintiff had any rights pursuant to a third-party contract. Thus, this grievance cannot exhaust any claim asserted against the Defendants in the present action. *See* Plaintiff's grievances, attached Exhibit A.

In addition, Plaintiff exhausted a grievance claiming that MaCI's Islamic services contractor's frequent absences and habitual lateness denied Plaintiff religious services. However, nowhere does this grievance suggest that any Defendant abused any prison policy or was personally involved in enforcing or executing any ODRC policy that substantially burdened *Plaintiff's* religious practice or coerced *him* into doing anything that would run afoul of *his*

sincerely held religious beliefs. *Doe v. DeWine*, 910 F.3d at 848-49. Nor  does this grievance claim that Plaintiff had any rights pursuant to a third-party contract. Therefore, this grievance cannot exhaust any claim asserted against the Defendants in the present action. *See* Plaintiff's grievances, attached Exhibit A.

Likewise, Plaintiff exhausted a grievance alleging that MaCI's Islamic services contractor retaliated against him during Taleem and Jummah services in violation of 5120-9-4. Nevertheless, nowhere does the grievance suggest that any Defendant abused any prison policy or was personally involved in enforcing or executing any ODRC policy that substantially burdened *Plaintiff's* religious practice or coerced *him* into doing anything that would run afoul of *his* sincerely held religious beliefs. *Doe v. DeWine*, 910 F.3d at 848-49. Neither does this grievance claim that Plaintiff had any rights pursuant to a third-party contract. Thus, this grievance cannot exhaust any claim asserted against the Defendants in the present action. *See* Plaintiff's grievances, attached Exhibit A.

Similarly, Plaintiff exhausted a grievance alleging that MaCI's Islamic religious contractor not only comes late and/or leaves early for Taleem and Jummah to accommodate the other contracts he services, but also that he is racially divisive. Although the grievance claims that 72-REG-(B)(2) requires religious services staff to be trained in religious practices and that 72-REG-(C)(3) requires religious services providers to appeal to the broadest range of adherents in the faith group, nowhere does the grievance suggest that any Defendant abused any prison policy. Instead, it was MaCI's Islamic religious contractor who Plaintiff alleges failed in these duties. Neither does Plaintiff's grievance suggest that any Defendant was personally involved in enforcing or executing any ODRC policy that substantially burdened *Plaintiff's* religious practice or coerced *him* into doing anything that would run afoul of *his* sincerely held religious beliefs. *Doe v. DeWine*, 910

F.3d at 848-49. Nor does the grievance claim that Plaintiff had any rights pursuant to a third-party contract. Accordingly, this grievance cannot exhaust any claim asserted against the Defendants in the present action. *See* Plaintiff's grievances, attached Exhibit A.

Plaintiff filed a grievance which claimed that ODRC Policy 72-REG-01 did not permit Ramadan prayer during an out-count in MaCI's dining hall and that 72-REG-12 prohibited Ramadan prayers in the chow hall that involved kneeling, audible chanting or group activity during mealtime. However, while ODRC policies cannot be grieved, a prison official's alleged abuse of a prison policy is certainly grievable. Nonetheless, nowhere does this grievance suggest that any Defendant abused any prison policy or was personally, actively, and/or intentionally involved in enforcing or executing any ODRC policy that substantially burdened Plaintiff's religious practice or coerced him into doing anything that would run afoul of *his* sincerely held religious beliefs, *Doe v. DeWine*, 910 F.3d at 848-49, much less that Plaintiff had any rights pursuant to a third-party contract. Accordingly, this grievance cannot exhaust any claim asserted against the Defendants in the present action. *See* Plaintiff's grievances, attached Exhibit A.

Plaintiff also filed an additional grievance alleging that ODRC policy did not permit Ramadan prayer during out-counts. Although the grievance was filed outside the scope of the AR, its merits were addressed. However, nowhere did the grievance suggest that any Defendant abused any prison policy or was personally involved in enforcing or executing any ODRC policy that substantially burdened *Plaintiff's* religious practice or coerced *him* into doing anything that would run afoul of *his* sincerely held religious beliefs. *Doe v. DeWine*, 910 F.3d at 848-49. Nor did the grievance claim that Plaintiff had any rights pursuant to a third-party contract. Therefore, this grievance cannot exhaust any claim asserted against the Defendants in the present action. *See* Plaintiff's grievances, attached Exhibit A.

Notably, Plaintiff failed to exhaust the remainder of the grievances he filed during this time period. For instance, Plaintiff failed to exhaust a grievance alleging he was retaliated against for filing a complaint against a MaCI Islamic services contractor because he neglected to take the third step in the exhaustion process, namely filing the requisite appeal. But even if Plaintiff had properly exhaust this claim, nowhere did it suggest that any Defendant abused any prison policy or was personally involved in enforcing or executing any ODRC policy that substantially burdened *his* religious practice or coerced *him* into doing anything that would run afoul of *his* sincerely held religious beliefs. *Doe v. DeWine*, 910 F.3d at 848-49. Nor did this grievance claim that Plaintiff had any rights pursuant to a third-party contract. As such, this grievance cannot exhaust any claim asserted against the Defendants in the present action. *See* Plaintiff's grievances, attached Exhibit A.

Plaintiff also failed to exhaust a grievance which claimed that MaCI's Islamic religious contractor retaliated against him by falsely reporting that he was attempting to radicalize Muslim inmates. The grievance was determined to be untimely because the appeal was due in the chief inspector's office on December 19, 2016 (fourteen days after Plaintiff received an appeal form) but was not received until February 8, 2017. Perhaps more important, Plaintiff's Complaint was filed on October 25, 2016. ECF No. 1. As such, it was filed before this grievance was exhausted on April 17, 2017, contrary to the PLRA's mandates. 42 U.S.C. § 1997e(a). Neither does this grievance suggest that any Defendant abused any prison policy or was personally involved in enforcing or executing any ODRC policy that substantially burdened *Plaintiff's* religious practice or coerced *him* into doing anything that would run afoul of *his* sincerely held religious beliefs, *Doe v. DeWine*, 910 F.3d at 848-49, or that Plaintiff had any rights pursuant to a third-party contract.

Accordingly, this grievance cannot exhaust any claim asserted against the Defendants in the present action. *See* Plaintiff's grievances, attached Exhibit A.

Plaintiff likewise failed to exhaust a grievance which claimed he was improperly transferred to the London Correctional Institution ("LoCI") due to the problem he was having with an Islamic services contractor. Not only was the grievance not addressed on its merits because issues regarding prison transfer cannot be grieved under administrative rule 5120-9-31, but also it failed to suggest that any Defendant abused any prison policy, much less that Plaintiff's prison transfer substantially burdened *his* religious practice or coerced *him* into doing anything that would run afoul of *his* sincerely held religious beliefs. *Doe v. DeWine*, 910 F.3d at 848-49. Nor did it allege that Plaintiff had any rights pursuant to a third-party contract. Perhaps even more important is that *Tolliver* I was filed on October 25, 2016, ECF No. 1, one month prior to this claim being exhausted on November 29, 2016. For all these reasons, pursuant to 42 U.S.C. § 1997e(a), this grievance cannot exhaust any claim asserted against the Defendants in the present action. *See* Plaintiff's grievances, attached Exhibit A.

Moreover, a grievance is only exhausted after the inmate has received the chief inspector's final decision. *Ross v. Blake*, 136 S. Ct. at 1856; *Freeman v. Francis*, 196 F.3d at 645. By contrast, Plaintiff's Complaint was filed on October 25, 2016, ECF No. 1, while the chief inspector's decision regarding Plaintiff's grievance claiming he was the victim of a hate crime and that his theft loss report was improperly investigated was not rendered until April 17, 2017. Even assuming arguendo that Plaintiff did not file *Tolliver* I prematurely and that all the steps of the grievance process were properly followed, nowhere does this grievance suggest that any Defendant abused any prison policy or was personally involved in enforcing or executing any ODRC policy that substantially burdened *Plaintiff's* religious practice or coerced *him* into doing anything that would

run afoul of *his* sincerely held religious beliefs. *Doe v. DeWine*, 910 F.3d at 848-49. Nor does this grievance claim Plaintiff had any rights pursuant to a third-party contract. Thus, this grievance cannot exhaust any claim asserted against the Defendants in the present action. *See* Plaintiff's grievances, attached Exhibit A.

Furthermore, Plaintiff failed to exhaust a grievance alleging that LoCI's Islamic religious contractor was not serving the broadest spectrum of faith as required by 72-REG-01-12 because his appeal was not filed with the chief inspector's office within fourteen calendar days of Plaintiff's receipt of the grievance disposition. Equally important, the Complaint was filed before the decision of the chief inspector was issued, contrary to the requirements of 42 U.S.C. § 1997e(a). *See Ross v. Blake*, 136 S. Ct. at 1856 ("An inmate 'shall' bring 'no action'..., absent exhaustion of available administrative remedies."). Moreover, nowhere does Plaintiff's grievance suggest that any Defendant abused any prison policy or was personally involved in enforcing or executing any ODRC policy that substantially burdened *Plaintiff's* religious practice or coerced *him* into doing anything that would run afoul of *his* sincerely held religious beliefs. *Doe v. DeWine*, 910 F.3d at 848-49. Neither does the grievance claim that Plaintiff had any rights pursuant to a third-party contract. Accordingly, this grievance cannot exhaust any claim asserted against the Defendants in the present action. *See* Plaintiff's grievances, attached Exhibit A.

Although Plaintiff also filed a grievance against LoCI's Warden claiming some evidentiary exhibits from his RLUIPA suit were missing, some materials that were not his were allegedly found with his property when it was searched, and an allegedly false report was filed against him that could have damaged his security level and appearance at the parole board, only after receiving the chief inspector's final decision is an inmate's grievance properly exhausted. *Ross v. Blake*, 136 S. Ct. at 1856; *Freeman v. Francis*, 196 F.3d at 645. Yet while *Tolliver* I was filed on October 25,

2016, ECF No. 1, this administrative grievance was not exhausted until January 25, 2017. Thus, this grievance was not exhausted in accordance with the PLRA's mandates. 42 U.S.C. § 1997e(a). But even if Plaintiff had proceeded through all the steps of the grievance process before filing his Complaint, nowhere did the grievance suggest that any Defendant abused any prison policy or was personally involved in enforcing or executing any ODRC policy that substantially burdened *Plaintiff's* religious practice or coerced *him* into doing anything that would run afoul of *his* sincerely held religious beliefs. *Doe v. DeWine*, 910 F.3d at 848-49. Nor did the grievance claim that Plaintiff had any rights pursuant to a third-party contract. Therefore, even if it were timely filed this grievance cannot exhaust any claim asserted against the Defendants in the present action. *See* Plaintiff's grievances, attached Exhibit A.

Certainly, the plain language of the PLRA makes clear that exhaustion is a mandatory precondition to filing an action in federal court. *Williams v. Harris*, No. 1:11-cv-362, 2012 U.S. Dist. LEXIS 108339, 2012 WL 3150955, at *10 (S.D. Ohio Aug. 2, 2012). Not after. *Hopkins v. Ohio Dep't of Corr.*, 84 F. App'x 526, 527 (6th Cir. 2003) ("Exhaustion may not be completed after a federal complaint has been filed.") Accordingly, if claims are filed in federal court that were not properly exhausted prior to the suit, those claims should be dismissed. *Boyd v. Corr. Corp. of Am.*, 380 F.3d 989, 994 (6th Cir. 2004). Because none of Plaintiff's claims were exhausted against any of the Defendants before the instant case was filed, Defendants should be granted summary judgment regarding all the claims asserted in *Tolliver* I. *Id.*

## VII. Conclusion.

That Plaintiff is *pro se* does not reduce his obligations under Rule 56. Rather, "liberal treatment of *pro se* pleadings does not require lenient treatment of substantive law." *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006). Indeed, "O[o]nce a case has

progressed to the summary judgment stage, . . . 'the liberal pleading standards under *Swierkiewicz* [*v. Sorema, N.A.*, 534 U.S. 506, 512-13, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002)] and [the Federal Rules] are inapplicable.'" *Tucker v. Union of Needletrades, Indus., & Textile Emples.*, 407 F.3d 784, 788 (6th Cir. 2005) (quoting *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004)).

Thus, when opposing a motion for summary judgment, a party cannot rely on allegations or denials in unsworn filings since his or her "status as a *pro se* litigant does not alter [this] duty on a summary judgment motion." *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010); *see also United States v. Brown*, 7 F. App'x 353, 354 (6th Cir. 2001) (affirming grant of summary judgment against a *pro se* plaintiff because he "failed to present any evidence to defeat the government's motion").

Because Plaintiff's RLUIPA claim is moot, because Plaintiff did not exhaust his RLUIPA and third-party breach of contract claims, because there is no evidence suggesting that any of the Defendants abused prison policy, because Plaintiff cannot meet his burden of showing that he has a sincerely held religious belief that was substantially burdened by any action personally, actively, and/or intentionally taken by any of the Defendants, and because Plaintiff cannot meet his burden of showing that he was an intended beneficiary in any contract entered into between ODRC and any Islamic religious services contractor, Defendants are entitled to summary judgment respecting all the claims remanded in *Tolliver* I.

Respectfully submitted,

DAVE YOST
Ohio Attorney General


s/ *Mindy Worly*
MINDY WORLY (0037395)
Principal Assistant Attorney General
Criminal Justice Section
Corrections Litigation Unit
30 East Broad Street, 23rd Floor
Columbus, Ohio 43215
Phone: (614) 728-0161/Fax: (866) 474-4985
Mindy.Worly@OhioAGO.gov

*Trial Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was filed electronically on November 21, 2025, and will

be served upon Plaintiff via U.S. mail, postage prepaid at the following address:

Kevin Tolliver, #A428-576
Grafton Correctional Institution
2500 South Avon Belden Road
Grafton, Ohio 44044


s/ *Mindy Worly*
MINDY WORLY (0037395)
Principal Assistant Attorney General